In The United States District Court
For The District Of Delaware

James W. Riley,
        Plaintiff,

    v.                                    C.A. No. 06-001-GMS

Stanley Taylor, etal.,
        Defendants.

Plaintiff's Request For A
Preliminary Injunction And
Temporary Restraining Order
In Response To Defendants'
Taylor, Carroll And Pierce
False Answer To Plaintiff's
Complaint 18 U.S.C.§ 3626(2000)



FILED

JUL 18 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Now Comes plaintiff James W. Riley who request
this court to issue a preliminary injunction and
temporary restraining order directing defendants to
provide immediate medical treatment for his serious
medical complains. The defendants false Answers to
plaintiff's complaint filed on June 26, 2006, clearly
demonstrates their continuing deliberate indifference
And reckless disregard for plaintiff's health and life.
    In support hereto plaintiff state the following:
    Paragraph 2 of defendants' June 26, 2006 Answer
to plaintiff's complaint denies that defendants

1

Munson And Malaney are STATE employees or employees
For the Department of Corrections (DOC), is materially
False and misleading. To the contrary, according to a
Sunday News Journal paper article dated September 25,
2005 at page A10 defendant Taylor admitted the Following:
that he approved For the Correctional Medical Services (CMS)
to hold Delaware's $12.45 million annual contract From
2000 to 2002, when it asked to be released From its
obligations; then at that point, Taylor admit that he
accepted a bid From First Correctional Medical (FCM) For
a $16.44 million annual contract; Taylor Further admit
that FCM left the STATE in July 2005 after explaining
that it, too, wanted to be released From its contract; at
this point, according to Taylor, in 2005 he re-hired CMS
to replace FCM which resulted in a new contract of $25.9
Million a year, a price hike of $9.5 million dollars.

Defendants Munson and Malaney were, or still is,
currently employees of CMS and FCM whom plaintiff allege
denied him medical treatment For serious medical needs
since 2004 to the present date. At all relevant times
of plaintiff's medical complaints and allegations of denial
of medical treatment For serious medical needs, the
defendants Munson and Malaney worked For the DOC
through a contract with CMS and FCM in which both
defendants were employees thereof.

See Attached Affidavit of Plaintiff Riley In
Support hereto. (Exhibit A-42 to 43).

2

Paragraph 3 OF deFendants' Answer states Falsely that they are without Knowledge or inFormation suFFicient to admit plaintiFF's allegations that he requested medical treatment For a rectum dysFunction and received a relaxant type medication without an examination and diagnoses. Contrary to deFendants' False admission, between September and October OF 2002 plaintiFF Filed several sick-call slips regarding his rectum dysFunction condition. PlaintiFF thought it may be hemorrhoids. A doctor Roy Decker seen plaintiFF on several occasions and prescribed a relaxant type OF medication in the Form OF pills and cream. Doctor Decker never conducted any physical examination to determine the cause OF plaintiFF's rectum dysFunction prior to prescribing medication. Medical charged plaintiFF an eight (8) dollar Fee For the prescribed medication in which plaintiFF's account records veriFy that on 03/17/2003 the sume OF $ 8.00 was deducted For medical services received on/or around 9/23/2002. (See Exhibit A-41). Thus deFendants have direct access to plaintiFF's medical records and prison account records which contain all these relevant Facts. So deFendants cannot say, as they Falsely claim, that they are without inFormation or Knowledge suFFicient to admit the accuracy OF plaintiFF's medical complaints. Furthermore, plaintiFF Filed two medical grievances in 2002 and 2003 (Ex. A-1 & A-2) For inadequate medical treatment and lack oF physical examination to make proper diagnoses

of the rectum injury prior to prescribing medication. Because medical grievances are rarely acknowledged, in 2003 plaintiff forwarded a letter to the medical personnel boss, the defendant Warden Carroll explaining the entire situation to him ( See Ex. A-3 ). The grievances and letter of complains were all ignored and no medical treatment was provided. The defendant Warden Carroll is liable as a supervisory official because he fail to remedy unlawful conditions that he know or should know about after being placed on direct notice of plaintiff's mistreatment by the medical staff and the failure to otherwise carry out his responsibilities to provide adequate medical care to plaintiff. See Aswegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992) (Deputy Warden and Security Director held liable for failure to correct known violations of doctors' orders); Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (Deputy Superintendent of Treatment held liable for failure to respond to complaints despite his knowledge of a breakdown in the medical system), cert. denied, 113 S.ct. 2992 (1993); and Brown v. Coughlin, 758 F.Supp. 876, 889 (S.D.N.Y. 1991) (Commissioner and Superintendent have personal duties to ensure adequate medical services).

Finally, paragraphs 4 thru 11 of defendants' answer again falsely state that they are without knowledge or information sufficient to admit plaintiff's allegations that in the years 2004 and 2005 unidentified doctors prescribed eyeglasses and special orthopedices

4

Footwear in which he never received ; That defendants are without knowledge or information sufficient to admit plaintiff's allegations that he contracted a facial skin infection similar to flesh eating becteria associated with necrotizing fasciitis ; And that defendants are not liable for failing to provide plaintiff adequate medical treatment for the necrotizing fasciitis infection and rectum injury or their failure to provide eyeglasses and footwear prescribed or recommended by several doctors who seen plaintiff on different occasions. Again the defendants have access to plaintiff's entire medical files that contain all relevant information relating to these medical complaints. The medical records will reflect that doctors Decker, Brown and Barbara (her first name) seen plaintiff for the aforementioned specified medical complaints ; And it were doctors Brown and Barbara whom conducted the 2004 and 2005 annual physical examinations wherein the previous initial 1995 special orthopedices footwear ORDER OF Doctor Burnoff was renewed and the eyeglasses were prescribed or recommended by Dr. Barbara. Also in support that defendants have sufficient knowledge of these medical complaints see attached hereto correspondences to defendants Warden Carroll, Deputy Warden Pierce and medical grievances (Exhibits A-1 thru A-24) and Letters to and from Attorney Stephen A. Hampton and Staff Attorney for ACLU Julia M. Graff (Exhibits A-25 thru A-37) and Letter to Representative

Hazel D. Plant (Exhibit A-38 to A-40). The record indisputably reflect that defendants possesses sufficient knowledge and information that form the basis of plaintiff's medical complaints. The records further reflect that defendants continue to deny plaintiff any medical treatment for serious medical needs that result in unnecessary pain and prolonging suffering and thus refuse to provide plaintiff with the footwear and eyeglasses per orders of the doctors. (See Plaintiff's complaint D.I. 2). See, Smith v. Mensinger, 293 F.3d 641, 652 (3d.Cir. 2002) (Supervisors... Neither can escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues). The defendants are therefore liable for being deliberate indifferent to plaintiff's serious medical needs in violation of his 8th Amendment right to reasonable adequate medical care. "A medical need is 'serious' if it has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognise the necessity for a doctor's attention". See Henderson v. Harris, 672 F.Supp. 1054, 1059 (N.D. Ill. 1987) (citing Estelle v. Gamble) (inadequate medical treatment for rectum dysfunction, both medical staff and supervisory official held liable under Estelle) Id. At 1062-63; Estelle v. Gamble, 429 U.S. 97, 104-05 (1996) (intentionally interfering with the treatment once prescribed or intentionally denying or delaying a care); Also, See, Goodman v. Wagner, 553 F.Supp. 255, 259 (E.D. Pa. 1982) (failure to follow a doctor's orders for wound

treatment). As here, a medical condition may also be serious if it "significantly affects an individual's daily activities". See Tillery v. Owens, 919 Supp. 1256, 1286 (W.D. Pa. 1989). In considering whether a serious medical need exist, the court will consider several factors, including: (1) whether a reasonable doctor or patient would consider the need worthy of comment or treatment; (2) whether the condition significantly affects daily activities, and (3) whether you have chronic and serious pain. Brock v. Wright, 315 F.3d 158 (2d Cir. 2003). The denial of medical treatment for the reasons identified in plaintiff's Complaint (D.I. 2) meet these 3 requirements rendering plaintiff's medical needs serious and defendants' failure to provide any treatment or to honor the doctors' orders for treatment is inconsistent with the 8th Amendment's standard of decency prohibiting cruel and unusual punishment.

### Irreparable Injury; Likelihood Of Success On Merits And The Public Interest Ensuring Adequate Medical Care For United States Prisoners

Plaintiff Riley seek preliminary injunction and temporary restraining order (P.I & TRO) to be issued against defendants to provide adequate medical treatment for his serious medical needs until the disposition of District Court's Final judgment. A P.I/TRO is

7

appropriate under these circumstances to prevent plaintiff
from suffering needless unnecessary pain and irreparable
injury at the hands of defendants' willful, callous
disregard for plaintiff's serious medical needs which
constitute deliberate indifference to provide the standard
of care required by Federal law. See Campos v. Coughlin,
854 F. Supp. 194 (S.D.N.Y. 1994); Masonoff v. DuBois, 853 F. Supp.
26 (D. Miss. 1994); Yarbaugh v. Roach, 736 F. Supp. 318, 320
(D.D.C. 1990); and Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988)
(evidence of systemic deficiencies in ... health care supported
a preliminary injunction). During a six (6) month investi-
gation of the Delaware DOC's health care system by the
News Journey Paper Company, a former doctor and two
nurses who worked in Delaware prisons for CMS and
FCM, and dozens of inmates and their families made
similar claims that prison health care in Delaware is
dangerously substandard—leading to needless deaths,
prolonged suffering and the spread of infectious disease
inside and outside prison wall. (See Front Page Article
in Wednesday September 28, 2005 News Journey). At
any potential trial in connection with this civil action
complaint plaintiff will request this court to issue a
subpoena duces tecum to produce the results of the News
Journey paper investigation on the DOC's inadequate
health care to its incarcerated prisoners. Considering
the overwhelming evidence against the defendants
for failing to provide the level of medical care required

by Federal Law consistent with the constitutional standard enounciated by the United States Supreme Court in <u>Estelle v. Gamble</u>, the likelihood of success that plaintiff will ultimately succeed on the merits, at a jury trial, are great.

Thus, the infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that "it is but just that the <u>public</u> be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself". <u>Estelle</u>, at 103-04.

Lastly, when this court direct defendants to provide plaintiff immediate medical treatment it shall do so by the terms stated in paragraphs (P) and (T) of the Relief Section to plaintiff's complaint (I.D.2) and in accordance with Rule 35? (or Rule 35 (a))* of the Fed.R.Civ.Pro. for "independent medical examinations." This court can grant an order to have a private doctor or community hospital doctor (not associated with CMS or FCM) to perform any medical examinations on plaintiff at the Delaware Correctional Center. This independent

---

*    Because plaintiff's access to Law Library is very limited he don't have access to the Federal Rules of Civil Procedures for the United States District Courts to verify the correct cite of rule governing requests for "Medical Examinations."

9

medical examination will allow this court to accurately and fairly determine the seriousness and extent of the pain and suffering associated with plaintiff's rectum injury, the necrotizing fasciitis infection and denial of orthorpedics footwear and eyeglasses. The prospective injunction relief requested herein is narrowly tailored to extend no further than plaintiff's particular situation as required by 18 U.S.C. § 3626(a). Cason v. Secklinger, 231 F.3d 777, 783-84 (11th Cir. 2000).

Wherefore, this court have no other option but to issue a P.I \ TRO directing the defendants Taylor, Carroll and Pierce to properly and effectively treat plaintiff for his long overdue medical complaints and to fulfill the prescribed treatment ordered by doctors several months ago.

James W. Riley, pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

(Date: July 9, 2006

10