# aclu delaware

March 21, 2006

Mr. James Riley
SBI# 169716
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Riley,

I have reviewed your file, which Mr. Hampton forwarded to me last month. I have several follow-up questions I am hoping that you will answer at your earliest convenience.

As you may know, the Prison Litigation Reform Act (PLRA) of 1996 made it harder for prisoners to file lawsuits in federal court. One of the most significant hurdles to overcome is exhaustion of the prison's grievance procedure. This law requires that you complete all levels of appeal, even if prison staff tells you that your grievance is too late, or rejects your grievance for some other reason. If you file a lawsuit in federal court before using every step of your prison's grievance procedure, it will almost certainly be dismissed.

It appears that your primary health-related concerns are a facial skin infection (methicillin-resistant staphylococcus) and continuing pain associated with an ankle injury, for which you are seeking special sneakers. Please provide answers to the following questions about your medical care to the best of your ability. If you do not recall the answer, or do not have access to paperwork that would provide the answer, just let me know, and we will do our best to make sense of the information we already have.

1. I have a copy of Grievance # 12309, filed on March 2, 2005, in which you request high top boots and sneakers. Did you in fact ever receive the sneakers that were to be ordered for you, according to the Medical Grievance Committee?
2. According to the notation on the Grievance, you signed off on the resolution of this Grievance on 8/29/05. Is that because you were satisfied with the resolution?
3. If not, did you understand that by signing off on the grievance, you were indicating your satisfaction and waiving your right to appeal?
4. I do not have copies of any official grievances relating to your skin infection. I only have a copy of your letter to the Warden. Did you ever submit a Form #585 Grievance?
5. Please also let me know whether you have gone through all levels of the appeals process (Medical Grievance Committee → Bureau Grievance Officer → Bureau Chief). **If you have filed grievances and appeals, please send me copies of the documentation so I can review them.**

american civil liberties union delaware
100 West 10th Street • Suite 309 • Wilmington, Delaware 19801
(302) 654-3966   Ex. A-31

As for your friend Carlos Pabón, if he would like me to review his case as well, please have him write to me, in English or Spanish, with copies of all grievances and appeals he has filed, and any response from Medical.

Thanks so much for your patience as we comb through stacks of your, and other inmates,' medical files. As I stated before, this is not an offer of representation. We are still in the initial stages of collecting and analyzing information from inmates, and conferring with colleagues about the feasibility of legal action or other forms of advocacy on behalf of many inmates who share similar experiences and frustration with the provision of medical care in Delaware prisons.

Very Sincerely,

Julia M. Graff
Staff Attorney
ACLU of Delaware

Ex. A-32

From: James W. Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

To: Julia M. Graff
Staff Attorney
ACLU of Delaware
100 West 10th Street
Wilmington, Dela. 19801

March 27, 2006

Dear Ms. Graff,

I am in receipt of your March 21, 2006, letter requesting additional information to assist you to follow up on the inmates' medical files that Mr. Hampton forwarded to you last month for possible legal action for inadequate health care. I am not in favor of filing any unnecessary law suits against the prison, however prison officials have became so accustom with denying inmates the basic medical care that now there is no other alternative but to take legal action to show them that they can't blatantly disregard prisoners' constitutional rights.

You mention the Prison Litigation Reform Act (PLRA) require prisoners to exhaust all available Administrative remedies prior to filing a law suit. As you should know from all the previous newspaper articles on prison health care, one of the major problems was with the malfunctioning of the medical grievance procedures

Ex. A-33

process. If an inmate file a grievance and never get a hearing then no appeal can be taking to the Bureau Chief as you suggested as a prerequisite to filing a law suit.

So since there is sufficient proof that the grievance process is deficient then the exhaustion requirement you mention predicated on taking any legal action are established.

As for the Five (5) questions outlined in your letter, one through three relates to the Grievance #12309 I filed on March 2, 2005, regarding the denial of medical footwear. The grievance was finally heard Five (5) months later on August 29, 2005. It shouldn't take 5 months to get a medical grievance heard!! Such drastic delays are inconsistent with the 8th Amendment standard under Estelle v. Gamble, 97 S.ct. 285, 290 (1976) for treatment of 'inmates' serious medical needs that result in pain and suffering.

Now if you have a complete copy of the Resident Grievance Committee's decision on the Footwear which consist of Four (4) pages dated August 29, 2005, then you will notice that on page 2 that there is a notation that the footwear will be ordered. The grievance Chairperson, Officer Lise Merson, assured me that the Footwear will be provided as soon as the order is fulfilled.

So in answer to Question Number #2- No, I never received the sneakers that were to be ordered.

As for Question Number #4 which relates to whether or not I filed a grievance regarding my skin infection.

Ex. A-34

As part of my medical file provided to you by Mr. Hampton that grievance should be in there. Such a grievance was filed on April 10, 2005 and was returned to me four (4) months later in August of 2005. The case # is 15782. To this date the doctor have never seen me or conducted any tests to diagnose my skin infection after being exposed to an inmate who actually had methicillin-resistant Staphylococcus.

As a result of filing medical complaints and other court pleadings for other inmates the prison officials has retaliated against me by transfering me to disciplinary segregation based upon false accusations.

Also contained in the file that Mr. Hampton sent you should be a letter I wrote him dated October 2, 2005 which explains the hardship the prison is subjecting me to throughout my 20 years incarceration on death row and the retaliation that followed because the Third Circuit Court reversed my death sentence and after a re-trial I was not re-sentenced to death. So due to the racist prison officials such as Warden Thomas Carroll and other long term employees whom in the past sat on the Classification Committee or who were just lieutenants, etc., now have the ultimate power to keep me lock down as punishment for being exonerated of the death penalty.

Also due to an illegal photocopying and medical service debt of well over Two Thousand Dollars ($2,000) I

Ex. A-35

accumulated while housed on death row, the prison officials are using this debt as punishment to prevent me from purchasing the basic necessities and amenities enjoyed by the inmate general population. I am reduced to living in total poverty in prison!! See enclosed a pleading I filed in the Superior Court concerning this illegal debt. The Superior Court ruled against me. Although the prison no longer charge a fee for photocopying, but however they adopted a new policy of charging inmates for mailing postage, writing paper and envelopes. Because I am excluded from all gainful employment and the outstanding $2,000 debt I can't pay for this needed stationery and this is resulting in a whole billing debt I can never pay without some outside support which I don't have.

Also enclosed are two law suits I recently filed in the district court. One relates to my unjust segregated confinement and the other concern the denial of medical treatment. You will notice that one of the most serious medical complaints is the denial of treatment for a excruciating painful rectum dysfunction.

I hope you don't write me back and say that I have to keep begging for medical treatment through the grievance process. These law suits have not been served by the U.S. Marshal yet.

So if there is anyway you can resolve these matters with Commissioner Stan Taylor prior to my providing the U.S. Marshal with the required forms to execute

Ex. A-36

service of the law suits, please let me know soon as possible.

Thank You!
James Riley

Ex. A-37

From: James W. Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

To: The Honorable Hazel D. Plant
Representative
Legislature Hall
Dover, Delaware 19901

October 14, 2005

Re: Prison Health Care

Dear Honorable Plant,

    I am writing you regarding the problem with inadequate health and medical care at the Delaware Correctional Center. As you know, there were numerous newspaper articles of a Flesh-eating bacteria affecting the inmate population. This bacteria has since been identified as "Necrotizing Fasciitis". In a Sunday News Journal article dated September 25, 2005, Commissioner Stan Taylor is quoted as saying that "there were only two known cases of the deadly bacteria in his nine Facilities". However Mr. Taylor's statements are not true because I personally notified the DCC Warden Office, Medical and the Commissioner's Office as early as March 2005, of the possibility

1   Ex. A-38

that myself and several other inmates were affected by Necrotizing Fasciitis. To this date I have not been seen by the doctor despite filing several sick call slips and several complaints to the Warden's Office and Grievance Committee. (See Complaints Enclosed Herewith).

Because of these complaints and other unrelated legal course of action the Warden's Office retaliated against me by locking me down indefinitely in disciplinary segregation premise upon false accusations.

Just recently the News Journal reported in Sunday's paper dated October 9, 2005 that one of the prisoners, Japhis Lampkins, whom I was housed with in Building 23 of the Maximum Housing Unit (MHU), was hospitalized for necroting Fasciitis infection and had to have surgery.

I possibly contracted this skin infection from Mr. Lampkins while confined with him in building 23 (we are close friends).

Mr. Lampkins and I filed complaints with Medical around the same time beginning as early as March 2005. Only after Mr. Lampkins infection got so bad and the exposure of the problem by the News Journal did the DCC's medical staff provide him treatment, in September 2005, nearly 7-months after his initial complaint.

My exposure to necroting Fasciitis does not appear to be as serious as Mr. Lampkins or maybe my

2    Ex. A-39

immune system was much stronger than his and was able to fight off the bacteria. Or maybe the bacteria is dormant in my system which in any event I was not tested by medical for such diagnosis or screening for prevention. More importantly DCC has taking no preventive measures to test all prisoners closely confined with Mr. Lampkins in building 23, including myself. Thus, I am entitled to proper medical treatment, not punishment as an alternative for requesting medical assistance!

I appreciate if your office could take immediate action on my complaints and make sure that these medical issues are dealt with in a timely and appropriate manner to prevent an epidemic of necroting Fasciitis. To accomplish this goal the legislature must hold an emergency meeting to approve special funding for immediate testing and screening of prisoners.

Thank you!
James W. Riley

3   Ex. A-4b

# Individual Statement

From 1/8/2000 To 1/9/2004

**NAME** Riley, James W
**ACCOUNT ID** 00169716
**DORM** 23

| | Original Balance | | ($3.50) |

**COMMENTS:** QOL4dst 203.75

| TRANSACTION | DEPOSIT (OR WITHDRAWAL) AMOUNT | RECEIPT | PAYTO |
|---|---|---|---|

*Transactions For: 01/08/2000*

| Medical | ($8.00) | 102899 | |

Balance As Of: 1/8/2000    ($11.50)

*Transactions For: 05/02/2001*

| Mail | $10.00 | 88786 | |

Balance As Of: 5/2/2001    ($1.50)

*Transactions For: 08/23/2001*

| Mail | $15.00 | 9320 | |

Balance As Of: 8/23/2001    $13.50

*Transactions For: 12/28/2001*

| Mis | ($15.00) | | posted to wrong accout |

Balance As Of: 12/28/2001    ($1.50)

*Transactions For: 03/17/2003*

| Medical | ($8.00) | | 09/23/2002 |

Balance As Of: 3/17/2003    ($9.50)

*Transactions For: 01/08/2004*

| Canteen | $0.00 | | |

Balance As Of: 1/8/2004    ($9.50)

Ex. A-41

Friday, January 09, 2004    Page 1 of 1

4. Due to Taylor, Carroll, Pierce, Munson and Malaney willful failure to treat my serious medical needs result in continuing prolonged pain, suffering and extreme mental & emotional distress; and disrupt all my daily activities such as walking, exercising, and when inflammation of the rectum occurs after each bowel movement I can't do the simplest thing such as sitting down or sneezing without experiencing sharp pain of my rectum. All physical activities are suspended as long as the inflammation lasts, which may be 4 to 8 hours or longer depending upon irregularity of bowel movements.

5. Since I am forced to reveal the circumstances of my medical complaints to third and fourth parties outside the proper medical personnel contracted by the Department of Corrections (DOC) to provide adequate medical care to Delaware prisoners at DCC, this violate my right to confidentiality guaranteed by CMS and FMC policy practice.

6. I attest to all the factual allegations of denial of medical treatment set forth in the initial civil right complaint associated with sworn averments in paragraphs 1 thru 5 above herein.

The facts given herein are true and correct and swore to under the penalty of perjury.

DATE: 7/12/06          James Riley
                       AFFIANT

Sworn and Subscribed Before me on this 13th day of July 2006   Brian D. Engram
                                                                Notary Public

Brian D. Engram
Notary Public, State of Delaware
My Commission Expires June 14, 2008

Ex. A-43

## Certificate of Service

I, __James Riley__, hereby certify that I have served a true and correct cop(ies) of the attached: __Plaintiff's Request For A Preliminary Injunction And Temporary Restraining Order__ upon the following parties/person (s):

TO: Ophelia M. Waters, Esq.
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, Delaware 19801
(Attorney For Taylor, Carroll & Pierce)

TO: Kevin J. Connors, Esq.
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, Delaware 19899-8888
(Attorney For Munson And Malaney)

TO: _____

TO: _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this __16__ day of __July__, 2006

_James Riley_