EXHIBIT 1



# FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

06 - 1

James W. Riley

(Jury Trial demanded)

(Enter above the full name of the plaintiff in this action)

V.

Stanley Taylor, Thomas Carroll,
David Pierce; Amy Munson
and Medical assistant Malaney,



**FILED**

DEC 29 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

(Enter above the full name of the defendant(s) in this action)
Correctional Medical Systems and
First Correctional Medical.

I.    Previous lawsuits

    A    Have you begun other lawsuits in state or federal courts dealing with the same facts involved in this action or otherwise relating to your imprisonment?

        YES [ ]         NO [✓]

    B    If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

         1    Parties to this previous lawsuit

USDc|De..over 366-JJF; USDc|De..01 cv695-JJF et al;
USDc|De..84 cv 599-SLR; USDc|De..89 cv 690-RRM;
USDc|De..90 cv 337-SLR; USDc|De..90 cv 362-LON;
USDc|De..91 cv 342-JLL; USDc|De..91 cv 359-JJF;
USDc|De..98 cv 634-GMS; USDc|De..98 md 105 TINA; and
USDc|De..04 cv 01425-GMS-(Habeas,Criminal
actions pending). (plaintiff possess No Further
information on previous lawsuits).

2.

2  Court (if federal court, name the district, if state court, name the county)

_____ See B2 page 1 _____

3  Docket Number _____ See B2 page 1 _____

4  Name of judge to whom case was assigned

_____ See B2 page 1 _____

5  Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

_____ Adverse Judgments . not pending _____

6  Approximate date of filing lawsuit _____ See B2 page 1 _____

7  Approximate date of disposition _____ N\a _____

II.  A    Is there a prisoner grievance procedure in this institution? YES [✓] NO [ ]

B.    Did you present the facts relating to your complaint in the state prisoner Grievance procedure    YES [✓] NO [ ]

C.    If your answer is YES,

1  What steps did you take? Filed Grievances and wrote Letters to defendants Taylor, Carroll and Pierce. Also plaintiff logged complaint with Representative Hazel D. Plant and Dover Attorney Stephen Hampton.

2  What was the result? Defendants Taylor, Carroll and Pierce failed to correct the wrongs and grant any relief. The medical Grievances were resolved unfairly and with no action taken to correct denial of medical treatment.

D.  If your answer is NO, explain why not _____

N\a

E    If there is no prison grievance procedure in the institution, did you complain to prison authorities?  YES [ ]  NO [✓]

F    If your answer is YES,

1    What steps did you take? _____ N\a _____

_____

2    What was the result? _____ N\a _____

_____

-2-

III    Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A.    Name of Plaintiff  James W. Riley

Address  Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware. 19977

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions and place of employment of any additional defendants.)

B.    Defendant  Stanley Taylor  is employed as  Commiss.oner

at  Department Of Corrections 245 McKee Road, Dover, Delaware 19904.

C.    Additional Defendants  Warden Thomas Carroll, Deputy Warden David Pierce, and Health Services Administrators Amy Munson And Assistant Malaney. All defendants work at Delaware Correctional Center, 1181 Paddock Road Smyrna, Delaware. (DCC hereafter)

IV.    Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments. Or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

First Claim Of Denial Of Medical Treatment

(a) In 2002 plaintiff filed several sick call complaints with medical while housed in Building 18 of the Security Housing Unit (SHU). In those complaints plaintiff requested medical treatment for a rectum dysfunction stemming from an injury he sustained lifting weights in 1998. The doctor seen plaintiff on two occasions and prescribed a relaxant tpye. medication without conducting any kind of

-]

( continue. on reverse side
of this page ...)

... physical examination to diagnose the injury or problem. Plaintiff informed the doctor, as he inserted the initial sick call complaint, that he is experiencing excruciating painful swelling of his rectum each time he defecate. Plaintiff told the doctor that he needed surgery rather than medication to correct the problem or injury. The doctor said he can't recommend surgery and all he can do is prescribe medication. For three whole years (and continuing) plaintiff is left to endure the unnecessary painful swelling of his rectum every time he defecate. The swelling last for seven to 12 hours and during such time plaintiff is unable to do any daily activities.

(b) Plaintiff wrote several letters to defendant Warden Thomas Carroll in 2003 about the denial of adequate medical treatment for this rectum disfunction. To this date defendant Carroll has not responded to plaintiff's medical complaints and the medical staff has never conducted a physical examination to determine the extent of plaintiff's injury and prescribe the correct treatment to fix the problem to stop plaintiff's unnecessary pain and suffering.

(c) In 2004 and 2005 while housed in Building 23 of Maximum Housing Unit (MHU) during both of plaintiff's respective yearly annual physical examinations he complained to the doctors again and again about the untreated rectum disfunction and that he may need surgery to correct this problem. Again, nothing was done and plaintiff is left to suffer unnecessary pain continuously for years.

## Second Claim Of Denial Of Medical Treatment

(d) During the annual physical examinations in 2004 and 2005 while housed in building 23 of the MHU both doctors in those exams prescribed eyeglasses for a severe impair eye vision and special orthopedics footwear (boots & sneakers) due to a 1985 severe right

( continue on page 4 ) →

ankle fracture. The special footwear is to protect the surgical pins protruding from the skin and to provide support when walking and exercising. Continuous exercise of ankle was prescribed or instructed by the doctor (therapist) who preformed physical therapy. The special footwear is crucial to rehabilitation and other daily activities when plaintiff is required to put pressure on his ankle.

(e) Because the D.C.C. medical staff are denying plaintiff the eyeglasses and footwear prescribed or recommended by the doctors and therapist he is having frequent headaches due to untreated debilitating impair eye vision and excruciating pain in his ankle and knees, especially when exercising or running.

(f) In 2005 plaintiff filed grievances and wrote letters to defendants Wardens Thomas Carroll and Deputy Warden David Pierce regarding the medical staff failure to follow the doctors' orders to provide plaintiff with eyeglasses and special footwear.

(g) Defendant Warden Carroll disregarded all plaintiff's complaints, but however defendant Deputy Warden Pierce sent memos to Health Services Administrators defendants Amy Munson and Malaney to investigate the plaintiff's medical complaints described herein above. Defendants Munson and Malaney never corrected the obvious denial of medical treatments and denial of fulfillment of doctors' orders for the prescribed eyeglasses and special footwear.

(h) Plaintiff then filed several more complaints to defendant Warden Pierce regarding defendants Munson's and Malaney's failure to investigate and to provide plaintiff with the eyeglasses and footwear recommended by the doctors. Defendant Warden Pierce's response thereto was ... "I do not direct medical care concerns".

(i) Due to defendant Deputy Warden Pierce's response, this complaint pursuant to Civil Rights Act 42 U.S.C. § 1983 followed as a last option.

( continue on reverse side ) ...
of this page

4

Third Claim Of Denial Of
Medical Treatment

(J) In April 2005 while housed in building 23 of the MHU, plaintiff filed several sick call complaints after noticing that he appeared to have a facial skin infection similar to flesh eating bacteria associated with "Necrotizing Fasciitis". Several other inmates housed on the tier with plaintiff at that time was infected by the same bacteria, and one inmate, Japhis Lampkins, to whom plaintiff was closely associated was recently stricken by this infection and had to have surgery in September of 2005.

(K) To this date, because plaintiff isn't almost dead like Mr. Lampkins, he have not been permitted to see a doctor to be thoroughly examined, tested and treated if infected with Necrotizing Fasciitis.

(L) Plaintiff notified all defendants, Commissioner Taylor, Warden Carroll, Deputy Warden Pierce and Health Services Administrators the defendants Munson and Malaney about these medical complaints and how the Medical Staff was denying him treatment for this skin infection.

(M) The defendants named herein continue to deny plaintiff adequate examinations and testing by qualified doctors. Because of defendants' denial of medical treatment, plaintiff is experiencing lower back and joint pains which may be the direct result of Necrotizing Fasciitis bacteria infection. Also plaintiff is experiencing frequent re-occurrence of facial skin infection and scarring.

Fourth Claim Of Denial Of
Medical Treatment

(N) The defendants Commissioner Taylor and Warden Carroll are responsible for the complaints of denial of medical treatment described in Claims 1 thru 3 above herein because they fail to prevent and maintain policies for the following: 1) Adequate Staff, 2) Qualified Staff, 3) prevent interference with adequate medical care once prescribed by doctor and when it appear a medical need is serious, 4) Failure to remedy unlawful conditions that they knew or should have known existed with the medical company contracted to provide adequate

( Continue on back of page 5 )

V.    Relief

(State briefly exactly what you want the courts to do for you. Make no legal arguments.
Cite no cases or statutes.)

(P) Issue a declaratory judgment that plaintiff's medical needs
described in Claim 1 thru 4 above is serious and subject him
to constant unnecessary pain and suffering; and that

* defendants' conduct described in Claim 1 thru 4 above constitute
callous reckless deliberate indifference to plaintiff's serious
medical needs for surgery to correct rectum dysfunction; need
for eyeglasses for impair eye vision; need for special orthopedics
footwear and need for testing and treatment for Necrotizing
Fasciitis bacteria exposure to which plaintiff is continuing

(continue on reverse side of this
page →)

Signed this ___17___ day of ___December___, 2005.

_James W. Riley_
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

12/17/05
Date

_James W. Riley_
(Signature of Plaintiff)

*

(Q) Note: Plaintiff is suing each defendant in their
personal and official capacity for acts and omissions
committed under color of State and Federal law;
and for acts while employed for OCC, CMS and
FCM. Defendants' conduct described herein above
in Claim 1 thru 4 demonstrate reckless disregard
for plaintiff's serious medical needs.

5

EXHIBIT 2

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| PROCEDURE MANUAL | RELATED ACA STANDARDS: 36 | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:   INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: | | |
| EFFECTIVE DATE: Revised 5/15/98 | | |

I.    AUTHORITY:   DOC Policy 4.4

II.   PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.  Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE:   Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III.  APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP: all inmates under BOP custody or supervision.

IV.   DEFINITIONS:

A.    Bureau Grievance Officer (BGO):  A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.    Emergency Grievance:  An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C.    Grievance:  A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS SUBJECT: INMATE GRIEVANCE PROCEDURE | PROCEDURE NUMBER: 4.4 | PAGE: 2 OF 7 |
|---|---|---|

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

Health Services Administrator
Director of Nursing
Charge Nurse
Chief Medical Officer
Medical Records Clerk
Mental Health Counselor
Chief Dental Officer
Dental Assistant

V.   PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3.   The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4.   The IGP prohibits reprisals against staff or inmates for their use or participation in the process.  If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal.  This decision is appealable to the Bureau Chief of Prisons for final disposition.

5.   No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision.  This instruction includes contact for purposes of information gathering not merely decision making.  Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6.   All grievances shall be kept separate from the inmate's master file.  Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7.   The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days.  If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8.   Inmates are prohibited from submitting more than one grievance arising from a single incident.

9.   If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance".  All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: | |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | 4.4 | 6 |

recommendation. Decisions by the Bureau Chief of Prisons a final and not open to grievant interpretation. The Bureau ( of Prisons will return his final decision and the grievance to the IGC for closure and monitoring for issues of complianc

Emergency Grievance:

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately b Warden/Warden's Designee. A copy of the grievance shall be se to the IGC upon receipt by the Warden/Warden's Designee. And th Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will t decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance doe not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

Medical Grievance:

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

Universal Grievance:

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

Institutional Transfer:

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

Appeals:

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT



FOR THE DISTRICT OF DELAWARE

William E. O'Neil,          )
                           )
          Plaintiff,        )
     v.                     )
                           )   C.A. No. 99-849-SLR
Rick Kearney, Jean Snyder,  )
Dr. Weiss, Karen Clark,     )
                           )
          Defendants.       )

## MEMORANDUM ORDER

### I.    INTRODUCTION

William E. O'Neil ("plaintiff") is a Delaware prison inmate incarcerated at Sussex Correctional Institution ("SCI") in Georgetown, Delaware.  The defendants are the prison warden and three employees of Prison Health Services (collectively "defendants").  Plaintiff filed this action under 42 U.S.C. § 1983, asserting that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment for the defendants' failure to protect the plaintiff from an attack by another inmate.  Plaintiff seeks compensatory and punitive damages.  Procedurally, the court is faced with motions to dismiss from defendants.

### II.   FACTS

The basis for plaintiff's complaint is the placement of a violent inmate into his infirmary room on November 8, 1997.  Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states
that at 4:00 P.M. another inmate, Michael Hall, was brought into
the room with plaintiff. Apparently, Hall had assaulted another
inmate and was transferred to the infirmary for observation.
Plaintiff alleges that Hall has had similar problems in the past
as a result of his failure to take medication. The complaint
maintains that defendant Karen Clark, a psychologist in the ward,
was aware of Hall's problems and directed Hall to be placed in
the room with plaintiff anyway. Plaintiff further maintains that
Dr. Weiss, the mental health supervisor, had been treating Hall
and ordered him to be observed prior to these assaults. At
approximately 3:00 A.M., plaintiff was awakened by kicking and
beating from Hall. As a result, plaintiff required ten stitches.

   Plaintiff contends that defendants violated his Eighth
Amendment rights by acting with reckless disregard for his safety
when they placed a violent inmate in his room.

   Defendants move to dismiss the complaint for plaintiff's
failure to exhaust administrative remedies as required by 42
U.S.C. § 1997e(a).[1]

---

   [1] Defendants also argue that plaintiff has failed to allege
facts which would state a claim for a violation of the Eighth
Amendment and that plaintiff's claim is barred by the applicable
statute of limitations. However, because the case is being
dismissed for plaintiff's failure to exhaust administrative
remedies, no discussion of the merits of plaintiff's claim is
warranted.

2

III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §
1997e(a), provides that

> [n]o action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as available are
> exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71
(1996)). 18 U.S.C. § 2636(g) defines "prison conditions" as
"...the effects of actions by government officials on the lives
of persons confined in prison...." Actions under this clause
relate to "the environment in which prisoners live, the physical
conditions of that environment, and the nature of the services
provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291
(3rd Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the
defendants' actions fit under the purview of the statute. The
placement of a violent prisoner in plaintiff's room is certainly
an action that affected the environment in which he lived.
Because the action complained of is a "prison condition,"
plaintiff is required to exhaust administrative remedies, if any
exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner
grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2] (D.I. 2) In Booth, the court held that prisoners must exhaust administrative remedies available to them prior to filing a § 1983 action, whether or not the remedies provide the inmate-plaintiff with the relief desired. 206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3rd. Cir. 2000)). By applying § 1997e(a) without exception, the policies underlying the exhaustion requirements are promoted, that is, the agency involved is given the opportunity to discover and correct its own mistakes and also conserve judicial resources. Nyhuis, 204 F.3d at 75.

    V.    CONCLUSION

    Therefore, at Wilmington this 6th day of November, 2000,

    IT IS ORDERED that the motions to dismiss filed on behalf of defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark are granted.

                                    _____
                                    United States District Judge

---

    [7] Presumably this statement evidences that plaintiff thought the grievance process was only for prisoner and institution matters.

4

EXHIBIT 4

# EXHIBIT 4

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
James W. Riley v. Correctional Medical Systems ("CMS")
Civil Action NO. 06-001 GMS

\\15_A\LIAB\ES1HOMPSON\LLPG\365880\PASHELBY\15000\15000

EXHIBIT 5

1 of 1 DOCUMENT

FRANK WHALEN, JR., Plaintiff, v. CORRECTIONAL MEDICAL SERVICES, DR.
KEITH IVENS AND MELODY A. THORPE, Defendants.

Civil Action No. 02-246 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 21334*

November 20, 2003, Decided

**SUBSEQUENT HISTORY:** Complaint dismissed at *Whalen v. Ivens, 2004 U.S. Dist. LEXIS 9532 (D. Del., May 11, 2004)*

**PRIOR HISTORY:** *Whalen v. Corr. Med. Serv., 2003 U.S. Dist. LEXIS 14562 (D. Del., Aug. 18, 2003)*

**DISPOSITION:** [*1] Motion to dismiss complaint granted.

**COUNSEL:** Frank Whalen, Jr., Pro se Plaintiff.

Kevin J. Connors, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, Wilmington, Delaware, Attorney for Defendant, Melody A. Thorpe.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion Of Defendant, Melody A. Thorpe, To Dismiss Plaintiff's Complaint. (D.I. 35.) For the following reasons, the Court will grant Defendant's Motion.

### BACKGROUND

Plaintiff is an inmate alleging that various acts by Correctional Medical Services and its employees amounted to a deliberate indifference to his medical needs, and therefore, violated his *Eighth Amendment*

rights. Plaintiff alleges that during his incarceration Defendant administered to him an excessive amount of the drug Nubain, leading to his "near death and paralysis." (D.I. 2.) Defendant is a nurse practitioner who was employed by Correctional Medical Services at the time Plaintiff was treated. By her Motion (D.I. 35), Defendant moves [*2] to dismiss Plaintiff's Complaint.

### STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, a court must "accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000)*. A court will grant a defendant's motion to dismiss only if it appears that the plaintiff could prove no set of facts that would entitle him or her to relief. A court is to construe a handwritten pro se complaint liberally, holding it to a less stringent standard than pleadings drafted by attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)*.

### DISCUSSION

Defendant contends that Plaintiff has not satisfied the notice pleading required of *Federal Rule of Civil Procedure 8(a)*. Specifically, Defendant contends that Plaintiff's Complaint does not state a claim of deliberate indifference amounting to an *Eighth Amendment* violation. Further, Defendant contends that Plaintiff's Complaint [*3] does not allege that she personally committed any acts amounting to a deliberate indifference to Plaintiff's medical needs. In response, Plaintiff contends that his Complaint sufficiently alleged acts demonstrating Defendant's deliberate indifference in administering excessive doses of Nubain thereby leading to his alleged injury.

In order to successfully allege a *Section 1983* action for failure to provide medical care under the *Eighth Amendment*, an inmate plaintiff must allege practices that violate "evolving standards of decency." *Estelle, 429 U.S.*

at 102. Medical malpractice does not become an *Eighth Amendment* violation merely because the plaintiff is a prisoner. *Id. at 105.* Instead, the defendant's action must be said to constitute "'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id. at 106.* To meet this standard of deliberate indifference, the defendant must know of the inmate's condition and disregard an excessive risk of the inmate's health or safety. *Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).* Applying these standards, [*4] the Court will grant Defendant's motion to dismiss.

In his Complaint, Plaintiff alleges that "he was given an overdose of the Narcotic [sic] Nubain by defendants on 12-18-2000 at 2:30 P.M.; which led to plaintiff coming near death and paralysis." (D.I. 2.) Although this allegation sufficiently pleads an action for medical malpractice, an incident of medical malpractice does not amount to an *Eighth Amendment* violation simply because Plaintiff is an inmate. See *Estelle, 429 U.S. at 102.* Accordingly, even when viewing Plaintiff's Complaint under the liberal standards provided by *Rule 8(a)* and *Estelle,* the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.

An appropriate order will be entered.

## ORDER

WHEREAS the Defendant Melody A. Thorpe filed a Motion To Dismiss Plaintiff's Complaint (D.I. 35);

IT IS HEREBY ORDERED this 20 day of November, 2003, that Defendant Melody A. Thorpe's Motion To Dismiss Plaintiff's Complaint (D.I. 35) is GRANTED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE