IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES W. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-001 GMS |
| | ) | |
| STANLEY TAYLOR, THOMAS CARROLL, | ) | JURY TRIAL |
| DAVID PIERCE, AMY MUNSON, MEDICAL | ) | DEMANDED |
| ASSISTANT MALANEY, CORRECTIONAL | ) | |
| MEDICAL SYSTEMS and FIRST | ) | |
| CORRECTIONAL MEDICAL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS, CORRECTIONAL MEDICAL SYSTEMS (MORE PROPERLY KNOWN AS CORRECTIONAL MEDICAL SERVICES, INC.) AND MEDICAL ASSISTANT MALANEY, IN SUPPORT OF THEIR MOTION TO REVOKE THE PRISONER'S I.F.P. STATUS PURSUANT TO FED. R. CIV. P. 60 AND COMPEL IMMEDIATE PAYMENT OF FILING FEES**

Defendants, Correctional Medical Systems (more properly known as Correctional Medical Services, Inc.) and Medical Assistant Malaney, through their undersigned counsel, hereby respectfully request this Honorable Court to enter the attached Order, revoking the prisoner's I.F.P. status and to compel the immediate payment of filing fees, and, in support thereof, aver as follows:

    **A.**    **Statement of Facts and Procedural Posture**

Plaintiff-prisoner, James W. Riley, was incarcerated in the Delaware Correctional Center ("DCC") when he filed a Complaint in this matter on January 3, 2006, pursuant to 42 U.S.C. § 1983.[1] D.I. 2. Named, as Defendants are Stanley Taylor, Thomas Carroll, David Pierce, Amy

---

[1] 42 U.S.C. § 1983 reads, in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory…subjects, or causes to be subjected, any citizen of the United

Munson, and Medical Assistant Chris Malaney, Correctional Medical Systems and First Correctional Medical. D.I. 2. Correctional Medical Services ("CMS") is a private corporation that has been providing medical care to Delaware inmates since July 1, 2005.[2] Christine Malaney held a supervisory position for CMS as Health Services Administrator through May 1, 2006.

Plaintiff filed a Complaint in this matter on December 29, 2005 alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 and requesting declaratory judgment. In his Complaint, plaintiff alleges four discreet claims of "Denial of Medical Treatment." D.I. 2.[3] This Court, reviewed the Complaint pursuant to 28 U.S.C. § 1915.[4] D.I. 4. For review of a Complaint pursuant

---

States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

[2] Prior to July 1, 2005, CMS had provided medical care to Delaware inmates from July 1, 2000 through June 30, 2002.

[3] Defendants CMS and Malaney have filed a Motion to Dismiss on several bases, including the statute of limitations and Fed. R. Civ. P. 12 (b)(6). D.I. 22. On August 1, 2006, plaintiff-prisoner filed "Plaintiff's Motion for Summary judgment in Response to Defendants' [sic] Malaney's and Correctional Medical Systems Motion to Dismiss". D.I. 25. Defendants have filed a Response in Opposition to Plaintiff's Motion. D.I. 26.

[4] 28 U.S.C. § 1915, states, in pertinent part:
Proceedings in forma pauperis

(a) (1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined…
********
(b) (1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--
    (A) the average monthly deposits to the prisoner's account; or
    (B) the average monthly balance in the prisoner's account for the 6-month
    period immediately preceding the filing of the complaint or notice of appeal.
(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $ 10 until the filing fees are paid…

to 28 U.S.C. § 1915, the general rule is that "the commencement or filing of the suit [under § 1915(a)] depends solely on whether the affiant is economically eligible",[5] and granted the prisoner I.F.P.[6] status. D.I. 4.

On at least three other occasions, this prisoner has been granted status to proceed *in forma pauperis*, and the lawsuit was subsequently dismissed as "frivolous" or failure to state a claim upon which relief can be granted. Specifically, these federal lawsuits can be found at case numbers: 1:05-cv-00878-GMS; 1:01-cv-00695; and 1:00-cv-00366. Defendants assert that this Court should reconsider, and revoke, its Order granting the prisoner I.F.P status, to correct a clear error of fact and to prevent manifest injustice.[7]

### B.  Standard of Review

"A motion filed pursuant to Rule 60 (b) is 'addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all relevant circumstances.'" [8] According to Rule 60 (b) a party may file a motion for relief from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or

---

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee…

*********

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

[5] *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir. 1976)(citations omitted).
[6] *In Forma Pauperis.*
[7] This error described by Defendants is not one of reasoning by the Court; instead it is Defendants' contention that the Court did not apprehend the prisoner's violation of the prerequisites to proceeding in I.F. P.
[8] *Dietsch v. United States*, 2 F.Supp. 627, 630 (E.D. Pa. 1998)(quoting *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981), overruled on other grounds, *Roman v. Jeffes*, 904 F.2d 192, 195 n.4 (3d Cir. 1990)).

discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Defendants submit they are entitled to relief from this Court's Order granting the prisoner I.F.P status based upon Rule 60 (b)(1), mistake, inadvertence, surprise, or excusable neglect, and/or Rule 60(b)(6), the catch-all provision designed to provide relief in the interests of justice, presumably including the correction of manifest errors of law or fact.[9]

A motion for reconsideration[10] may be granted if the movant demonstrates i) an intervening change in the controlling law; ii) the availability of new evidence that was not available when the court issued its order; or iii) the need to correct a clear error of law or fact or to prevent manifest injustice.[11]

A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made.[12] Moreover, motions for reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided."[13] Reconsideration, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."[14]

---

[9] *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).
[10] Defendants acknowledge that the Rules do not expressly recognize motions for reconsiderations. *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997). Since filed more than ten days after entry of the Court's order granting of I.F.P. status to the prisoner, the proper standard to apply to the Motion is Rule 60(b).
[11] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).
[12] *See Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D. Pa. 1993).
[13] *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del. 1990).
[14] 735 F.Supp. at 1241 (citation omitted).

**C.     Legal Arguments**

**1.     Plaintiff is Not Entitled to I.F.P. Status**

**a.     Brief history of the I.F.P statute**

In 1892, the discretionary power of the Court to allow indigent plaintiffs to proceed in a cause of actions without first paying a filing fee, was codified.[15] The current *In Forma Pauperis* (I.F.P.) statute is codified at 28 U.S.C. § 1915. The purpose of the I.F.P. statute is "to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation."[16] However, aware of the potential for abuse, Congress included a subsection allowing for dismissal of frivolous or malicious actions.[17]

The Prison Litigation Reform Act of 1996 (PLRA) was enacted, at least in part, in response to the voluminous amount of frivolous prisoner litigation in federal courts.[18] A number of reforms were instituted, including an amendment to the I.F.P statute as it applies to prisoners. Specifically, a prisoner who is permitted to proceed under the I.F.P. statute is not excused from

---

[15] *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001)(citing Act of July 20, 1892, ch. 209 1-5, 27 Stat. 252).

[16] *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)(citing *Denton v. Hernandez*, 504, U.S. 25, 31 (1992)).

[17] *Denton*, 504 U.S. at 31.

[18] The Third Circuit explained that:
> Congress subsequently enacted the Prison Litigation Reform Act ("PLRA" or "Act"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts. See 141 Cong. Rec. S14408-01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (explaining that the number of prisoner suits filed "has grown astronomically-- from 6,600 in 1975 to more than 39,000 in 1994"). In enacting the PLRA, Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants. See 141 Cong. Rec. S7498-01, S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) ("Filing frivolous civil rights lawsuits has become a recreational activity for long-term residents of prisons."); 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995) (statement of Sen. Dole) ("Prisoners will now 'litigate at the drop of a hat,' simply because they have little to lose and everything to gain.").

*Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001).

paying filing fees; instead, the full pre-payment of the fees is not required, assuming certain criteria are met by the prisoner. When a prisoner qualifies for I.F.P. status, the prisoner is required to pay an initial partial fee, followed by installment payments, until the entire filing fee is paid. 28 U.S.C. § 1915 (b)(1).  Most notably, however, Congress also added § 1915 (g), the "three strikes rule," which limits a prisoner's ability to proceed I.F.P. if the prisoner abuses the judicial system by filing frivolous actions. Prisoners may avoid the limitation in this provision, however, if they are under "imminent danger of serious physical injury."  The "imminent danger" provision is measured at the time the complaint is filed, rather than at the time of the alleged incident.[19]

### b. The prisoner is in violation of the "three strikes" provision of the I.F.P. statute.

On at least three other occasions, this prisoner has been granted status to proceed *in forma pauperis*, and the lawsuit or appeal was subsequently dismissed as "frivolous" or failure to state a claim upon which relief can be granted.  Specifically, these federal lawsuits and/or appeals can be found at case numbers: 1:05-cv-00878-GMS; 1:01-cv-00695; and 1:00-cv-00366.[20]  Thus, this prisoner is in violation of the three strikes provision of the I.F.P. statute.

Notwithstanding the "three strikes," provision of the I.F.P. statute, a Prisoner is still entitled to precede I.F.P. is it demonstrated that there is "imminent danger of serious physical injury" at the time of filing the Complaint.  In the instant lawsuit, the prisoner was unable to meet this pre-requisite for I.F.P. status.

---

[19] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001)(overruling *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997)).
[20] Copies of these dockets are attached hereto at Exhibit "1".

### 2. The prisoner did not demonstrate "imminent danger of serious physical injury"

Prisoners may avoid the limitation in § 1915 (g), the "three strikes rule", however, if they are under "imminent danger of serious physical injury" at the time of filing the Complaint.

The Third Circuit has provided instruction as to "imminent danger"

> 'Imminent' dangers are those dangers which are about to occur at any moment or are impending…By using the term "imminent," Congress indicated that it wanted to include a safety valve for the "three strikes" rule to prevent impending harms, not those harms that had already occurred…[21]

Additionally, "allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915 (g) and authorize the prisoner to pay the filing fee on the installment plan."[22]

In his Complaint, plaintiff alleges discreet claims of "Denial of Medical Treatment.": rectal dysfunction, facial rash, and lack of orthopaedic footwear and eyeglasses. The plaintiff fails to allege "imminent danger" or any "serious physical injury" at the time of the filing of the Complaint. Moreover, the plaintiff can not demonstrate "imminent danger of serious physical injury" at the time of filing the Complaint.

In the instant lawsuit, the prisoner claims problems with rectal dysfunction that have been ongoing since 1998, as a result of an injury sustained while lifting weights. D.I. 2. In 2002, he alleges that sick call complaints were filed. D.I. 2 at ¶ IV (a). Plaintiff also demanded surgery, presumably also in 2002, and alleges that the doctor told Plaintiff that he could not recommend surgery and that all he could do was prescribe medication. *Id.* Rectal dysfunction issues pending since 2002, when the complaint was filed in December of 2005, cannot be considered "dangers which are about to occur at any moment or are impending."

---

[21] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001).
[22] *Id.* at 313 (quoting *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998)).

Plaintiff asserts in his Complaint that he had a "facial skin infection" in April 2005, "similar to flesh eating bacteria associated with 'necrotizing fascitis'", and that he has not been thoroughly examined by a "qualified doctors". D.I. 2 at § IV (j)-(l). He asserted that he has lower back pain and joint pain "which may be the direct result of necrotizing fascitis". *Id.* at § IV (m). The medical records indicate that plaintiff complained of a rash on his face on March 24, 2005, and he was provided treatment that same date, on which it was noted that he did not have a rash. On April 7, 2005, when he again requested treatment for a rash on his face, it was noted that he had just been treated on March 24, 2005 when it was noted that a rash did not exist. On July 11, 2005, Plaintiff was again examined and it was noted that there was no rash, open areas or raised areas on his face.[23] Again, a facial rash, that is alleged to be ongoing since April 2005, cannot be considered "dangers which are about to occur at any moment or are impending." Moreover, a facial rash, documented on two occasions as being nonexistent, is not a "serious physical injury".

In his Complaint, Plaintiff alleges that in 2004 and 2005, special orthopaedic footwear was ordered, boots and sneakers. The medical records reflect that on November 12, 2003, plaintiff acknowledged receipt of size 8 ½ New Balance high top sneakers and braces. D.I. 23. The medical records indicate that in 2004, while CMS was not under contract with the State of Delaware to provide healthcare to prisoners, there was a request by plaintiff for boots, but it appears this request was denied since he already had sneakers. D.I. 23. In appears that in January, 2005, again while CMS was not under contract with the State of Delaware to provide healthcare to prisoners, boots were ordered for plaintiff, but plaintiff claims he never received them. Plaintiff further asserts that he has not received eyeglasses.

---

[23]A copy of plaintiff's medical records from 2002 through 2006 is filed at D.I. 23.

Plaintiff's claims for eyeglasses and additional footwear fails to satisfy the "imminent danger of serious physical injury". Significantly, plaintiff's Complaint indicates that the orthopaedic footwear issues have been ongoing since 2004, more than a year before plaintiff's Complaint was filed, and the medical records indicate that the prisoner received orthopaedic footwear in 2003. Such allegations can not be construed as putting this prisoner in "imminent danger of serious physical injury".

### D. Conclusion

On at least three other occasions, this prisoner has been granted status to proceed *in forma pauperis*, and the lawsuit or appeal was subsequently dismissed as "frivolous" or failure to state a claim upon which relief can be granted. The prisoner has not alleged, nor demonstrated, that there was an "imminent danger of serious physical injury" at the time of filing the Complaint to trigger the exception to the "three strikes" provision of the I.F.P. statute. Therefore, based upon the foregoing, Defendants respectfully request that plaintiff's I.F.P. status be revoked, pursuant to Fed. R. Civ. P. 60, and the prisoner be compelled to pay the Court-imposed filing fees within thirty days, or the Complaint be dismissed with prejudice.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: */s/ Kevin J. Connors*
    KEVIN J. CONNORS, ESQ.
    DE Bar ID: 2135
    1220 North Market Street, 5th Fl.
    P.O. Box 8888
    Wilmington, DE 19899-8888
    Attorney for Defendants, Medical Assistant
    Malaney and Correctional Medical Services, Inc.

DATED: August 22, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAMES W. RILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 06-001 GMS |
| ) | |
| STANLEY TAYLOR, THOMAS CARROLL, ) | JURY TRIAL BY TWELVE |
| DAVID PIERCE, AMY MUNSON, MEDICAL ) | DEMANDED |
| ASSISTANT MALANEY, CORRECTIONAL ) | |
| MEDICAL SYSTEMS and FIRST ) | |
| CORRECTIONAL MEDICAL, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2006, I electronically filed the Memorandum of Points and Authorities of Defendants, Correctional Medical Systems (More Properly Known as Correctional Medical Services, Inc.) and Medical Assistant, Malaney, in Support of their Motion to Revoke the Prison's I.F.P. Statute Pursuant to Fed. R. Civ. P. 60 and Compel Immediate Payment of Filing Fees with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Ophelia Michelle Waters, Esquire
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801

I hereby certify that on August 22, 2006, I have mailed by United States Postal Service, the Memorandum of Points and Authorities of Defendants, Correctional Medical Systems (More Properly Known as Correctional Medical Services, Inc.) and Medical Assistant, Malaney, in Support of their Motion to Revoke the Prison's I.F.P. Statute Pursuant to Fed  R. Civ. P. 60 and Compel Immediate Payment of Filing Fees
 to the following non-registered participant:

James W. Riley
#169716
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN

BY:   */s/ Kevin J. Connors*
       KEVIN J. CONNORS, ESQ.
       DE Bar ID: 2135
       1220 North Market Street, 5th Fl.
       P.O. Box 8888
       Wilmington, DE 19899-8888
       Attorney for Defendants, Medical Assistant
       Malaney and Correctional Medical Services, Inc.