In The United States District Court
For The District Of Delaware

James W. Riley,
   Plaintiff,
v.
Stanley Taylor, et al.,
   Defendants

C.A. No. 06-001-GMS

Plaintiff's Reply To Medical Defendants' Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Summary Judgment

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 AUG 28 PM 12:09
Scanned

Now Comes the Plaintiff James W. Riley by way of this Final Reply to Medical Defendants CMS' And CMS Medical Assistant Malaney's August 15, 2006, Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Summary Judgment dated July 26, 2006. The Defendants' Opposition have no merits for the following reasons:

    A.   Defendants' Misapplication Of Estelle v. Gamble, 429 U.S. 97 (1976)

1. On pages 5 to 9 of their Opposition the defendants argue that Estelle supports CMS

defendants' decision to prescribe medication for plaintiff's rectum dysfunction and decisions not to treat plaintiff's exposure to necrotizing Fasciitis bacteria without first being properly examined by qualified doctors to appropriately diagnose the cause of the problem, or to make diagnosis, in order to render reasonable informed professional medical judgments to determine what treatment is required whether it be medication, surgery, further testing, therapy, etc. Estelle states at 106 that..."A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment". Here, the plaintiff James Riley don't allege any negligent in diagnosing and treatment of any misdiagnosed medical condition.

However the medical vendors (CMS/FCM defendants) contracted by defendants Taylor, Carroll and Pierce to provide medical care for Delaware prisoners did not conduct any physical examinations, tests, diagnoses or otherwise to identify plaintiff's medical conditions and prescribe the appropriate treatment.

2. Contrary to defendants' argument, the Estelle's deliberate indifference standard is premised upon the fact that petitioner Gamble was first examined by qualified doctors and after diagnosing his medical conditions exercised reasonable informed professional judgment to prescribe treatment for his back injury, high blood pressure and heart problem. See Estelle, 429 U.S. at 99-101 and at 107; e.g. See also Tillery v. Owens, 719 F.Supp. 1256,

1306-08 (W.D.Pa.1989), aff'd, 907 F.2d 418 (3d Cir. 1990) (citing "cursory" sick call inquiries and intake physical examinations that were not "thorough" and in which the patient was never touched); and Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990) (doctor failed to perform tests for cardiac disease in patient with symptoms that called for them).

There were no such prior physical examinations, tests, and diagnoses to identify the cause of plaintiff's rectum dysfunction before the physician prescribed medication that was ineffective. And no qualified doctor ever examined or tested plaintiff for his exposure and symptoms of the deadly flesh eating bacteria "necrotizing Faciitis". The Defendants Taylor, Carroll, Pierce, Munson and Malaney delegated this responsibility to unqualified nursing staff.

3. All of the plaintiff's complaints of denial of medical treatment attached to plaintiff's Request For Preliminary Injunction (P.I) Exhibits A-1 thru A-22 should be a part of the incomplete medical records the defendants provided to this court with their Motion To Dismiss. Those Complaints show that all defendants knew or should have known of plaintiff's needs for medical treatment but deliberately disregarded his serious medical needs which result in continuing prolonged pain and suffering.

- Defendants' Invalid Statute Of Limitation Defense

4. Also, defendants argument that plaintiff's claims

3

of denial of medical treatment for rectum dysfunction is barred by the Statute of Limitations is without merit because Exhaustion of Administrative remedies toll Limitations as argued in Plaintiff's Motion for Summary Judgment page 1-3. Thus Health Administrators defendants Munson and successor Malaney oversee the Grievance Process for CMS and FCM which failed to acknowledge plaintiff's grievance complaints and the complaints forwarded to the Health Administrator by defendant Warden Pierce for investigation, filed in 2002 thru 2005. Thus, Statute of Limitations are not applicable here because plaintiff is not claiming that defendants caused his injury, but however fail to provide treatment.

5. Even if this Court want to side with defendants, however under the deliberate indifference of Estelle plaintiff is still entitled to injunction relief requiring prison officials to provide immediate proper medical treatment. See Crooks v. Nix, 872 F.2d 804-05 (8th Cir. 1989)(damage claim properly dismissed, but Court should consider current medical records before ruling on injunction claim) and Lee v. McManus, 543 F.Supp. 386, 391-93 (D. Kan. 1982)(granting injunction to paraplegic prisoner to prevent medical neglect).

B. Plaintiff Moved For Summary Judgment Against All Defendants Whom All Are Bound Together By Contract To Render Medical Services

6. The defendants make another frivolous argument on page 9 of their Memorandum In Opposition to plaintiff's Motion For Summary Judgment by stating, (For blatantly Failing to provide plaintiff with special orthopaedic Footwear prescribed by doctors), that CMS was not under contract with the State of Delaware to provide health care to prisoners. However, on pages 1 to 2 of plaintiff's Request For A Preliminary Injunction (P.I) he explained how defendants Munson and Malaney are employees of both CMS and FCM through contract by the Department of Corrections (DOC), citing statements that defendant Commissioner Taylor made in Sunday New Journal paper article dated September 25, 2005. That same Article at page 10 & 11 quote Govener Ruth Ann Minner as saying :

> the contract awarded to CMS was not a "no-bid" contract, as described by Taylor. She argued that, even though CMS asked to be released from its contract in 2002, forcing the State to hire another vendor (FCM), CMS' return to Delaware came

(Continued)...

by piggy-backing on the contract of the vendor it replaced, FCM. "It was an extension on the contract, Minner explained. "They picked up from the Firm who left. They [CMS] took the contract from the prior Firm (FCM). The contract didn't change." *

According to Governor Minner CMS assumed all the responsibilities of the original contract with the former vendor FCM; and that included keeping and using the same medical staff and employees. (See Fourth Claim of Denial of Medical Treatment to plaintiff's original Complaint paragraphs (N) & (O)). Also on the Process Receipt and Return of the U.S. Marshals Service Form for defendant Munson, the Marshal/Deputy Remarks: That Munson ... "Has not been employed by CMS for over 1-year". (date from attempted service of Complaint on 4/8/06). This is proof that defendant Munson was employed by CMS after defendant Malaney took over

---

* There is no merit to defendants' claim that plaintiff Fail to allege personal involvement of CMS. To the contrary see "Fourth Claim of Denial of Medical Treatment" to plaintiff's original complaint and page 7-9 of Plaintiff's Request for A Preliminary Injunction, which is also designated as Plaintiff's Memorandum of Law In Support of Motion for Summary Judgment wherein plaintiff allege it is the policies of both FCM and CMS to denial inmates adequate medical treatment.

her position as Health Services Administrator in 2005 and was obligated to investigate and resolve plaintiff's allegations of denial of medical treatment as directed in the three (3) memos of defendant Deputy Warden Pierce. (See Pierce's Memos with Plaintiff's Letters of Complaints April, 2005 Exhibits A-11 to A-14, May 19, 2005 Ex. A-15 - A-18 and July 22, 2005 Ex. A-19 to A-22 attached to plaintiff's P.I).

7. Thus, defendant Munson, like defendant Malaney, was part of the DOC original contract with FCM assumed by CMS. Furthermore the defendants seem to imply that since CMS took over the contract from FCM its not the responsibility of CMS to execute, carry out and continue any ongoing medical treatment of prisoners prescribed by doctors' orders or to process pending medical grievances, complaints, doctors' orders, recommendations, prescriptions, etc., by the former medical vendor. The defendants' arguments are totally dubious and frivolous!!

- Defendants Continue To Advance False Arguments

8. The defendants continue to advance false arguments without any action tooken against them by the court. On page 9-10 of their opposition the defendants falsely state that plaintiff received orthopaedic footwear and eye-glasses prescribed and recommended by the doctor. First, the defendants keep referring to the footwear that

plaintiff received on November 12, 2003, and in doing so they falsely stated that plaintiff was provided "<u>braces</u>" with a pair sneakers. However see page 12 of Exhibit 4 to defendants' Motion To Dismiss, an "Inmate Medical Property Receipt" with plaintiff's and medical staff's signatures dated 11/12/03 verifying that plaintiff received one pair of "<u>New Balance</u>" sneakers - (NOTE: there is no mention of "braces" being provided). Moreover, plaintiff does not make any issues in his original complaint about the footwear provided on November 12, 2003. However, this 2003 "<u>Inmate Medical Property Receipt Form</u>" defendants keep referring to is actual evidence in plaintiff's favor because if plaintiff received the eyeglasses and footwear prescribed by the doctor in 2004 and 2005 or the footwear agreed upon during the August 2005 Grievance Hearing Resolution then there will be one of these <u>Inmate Medical Property Receipt Forms</u> containing both plaintiff's and medical staff's signatures verifying the transactions in the medical records provided to this court. Defendants does not produce any such <u>Receipt Forms</u> beyond 2003 which is not at issue here.

- <u>Defendants Other Misleading Argument</u>

9. The defendants also mention at page 9 of their Opposition that a doctor denied plaintiff's request for the orthopaedic boots in 2004 since he already had

sneakers. However the doctor was misled by the medical staff (as they attempt to mislead the Court here) to believe that plaintiff was only permitted to have <u>either</u> boots or sneakers once a year when in actuality he was entitled to <u>both</u>, a pair boots and sneakers, once a year. See a July 9, 2005 Letter Plaintiff wrote to defendant Deputy Warden Pierce and Memo To Health Services Administrator defendant Malaney from Pierce attached to Plaintiff's P.I as Exhibits A-9 thru A-22. (Note! Defendant Pierce's July 22, 2005 Memo lable plaintiff's medical complaints and complaints of racial discrimination as a negative attitude towards authority and directly suggested that retaliatory action be taking against plaintiff by the Classification Committee which explains his present and continued unjustified indefinite confinement in disciplinary segregation premised upon false misconduct charges).

Subsequently on January 21, 2005, after plaintiff explained to the doctor his entitlement to both boots and sneakers once a year, the doctor agreed, but also citing medical reasons, approved the prescription for the orthopaedic boots, but as indicated above was never provided by the defendants. (See Doctor's January 21, 2005 Non-Formulary Item Request Form For Alternative Therapies Exhibit 4 pg. 8 medical records to Defendants' Motion To Dismiss). Also the orthopaedic sneakers that was to be ordered as an agreement to the Informal

Grievance Resolution on August 29, 2005 was not honored by the defendants and the medical records the defendants provided the court does not reflect any order for sneakers beyond 2003. (See Grievance Report and Informal Resolution attached to Plaintiff's P.I Exhibit A-4 & A-5).

Therefore contrary to defendants' false and conclusory arguments against plaintiff's sworn Affidavit (attached to his P.I as Exhibit A-42 & A-43) about the frequent headaches and excruciating pain in his ankles and knees, especially when running and exercising associated with denial of footwear and eyeglasses are the very reason why the doctor prescribed orthopaedic footwear and recommended that plaintiff's eyes be examined by an ophthalmology specialist (eye doctor) for eyeglasses to alleviate this excruciating pain and headaches which affects the performance of plaintiff's daily activities. (See Second Claim of Denial of Medical Treatment To Plaintiff's Complaint).

10. The defendants' attorney is suggesting that this court abuse its authority by disregarding or second guessing the treatment recommended and ordered by the doctors. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3rd Cir. 1979) ("courts will disavow any attempts to second-guess the propriety or adequacy of a particular course of treatment... [which] remains a question of sound professional judgment") (citation omitted) (emphasis supplied).

11. Lastly, contrary to what defendants' attorney <u>personally</u> state at page 10 of their Opposition plaintiff do not have any orthopaedic footwear. The sneakers that were provided three (3) years ago in 2003 has since been worn out and dispose of.

12. Defendants' other contentions are totally at odds with Estelle's pain and suffering rule and the rule that prison officials cannot interfere with or delay treatment once ordered by doctors. 429 U.S. at 104-05. Plaintiff's 8th Amendment rights to reasonable medical care continue to be violated by defendants whom still have not provided plaintiff treatment for his serious medical need or provided the treatments ordered by doctors after having placed on direct notice by service of this complaint by the U.S. Marshal as early April 20, 2006. (See U.S Marshal Return Form for defendant Carroll).

Wherefore defendants offer no counter sworn affidavits to dispute plaintiff's request for summary judgment which is supported by sworn affidavit. And defendants can offer no sworn testimony at any trial by jury to oppose plaintiff's claims of denial of medical treatment which the medical records will support a verdict in his favor. And in light of defendants' fraudulent arguments in opposition to plaintiff's Request for Summary Judgment the Court, as a matter of law, must therefore

reject defendants' Motion To Dismiss and grant the plaintiff's summary judgment on the merits.

                Respectfully submitted,
                _James W. Riley_
                James W. Riley, pro se
                Delaware Correctional Center
                1181 Paddock Road
                Smyrna, Delaware 19977

Date: August 21, 2006

# Certificate of Service

I, James Riley, hereby certify that I have served a true and correct cop(ies) of the attached: Plaintiff's Reply To Defendants' Opposition To Plaintiff's Summary Judgment upon the following parties/person (s):

TO: Kevin J. Connors
1220 N. Market St. 5th, Fl.
P.O. Box 8888
Wilmington Delaware 19899-8888.

TO: Ophelia M. Waters, Esq.
Deputy Attorney General
820 North French St.
Wilmington, Delaware
19801

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this 24 day of August, 2006

James Riley

I/M James Riley
SBI# 169716 UNIT MAX Bldg. 2.1
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



$ 00.63
AUG 25 2006
MAILED FROM ZIP CODE 19977

Office of Clerk
U.S. District Court
844 King Street
Wilmington, Delaware
19801