IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES W. RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-01-GMS |
| | ) |
| STANLEY TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

**I.      BACKGROUND**

Before the court are two motions filed by the plaintiff, James W. Riley ("Riley"); a request for a preliminary injunction and temporary restraining order (D.I. 20) and a motion to stay all proceedings pending a ruling on a petition for writ of mandamus before the U.S. Court of Appeals for the Third Circuit (D.I. 38). On January 3, 2006, Riley filed this civil rights case alleging deliberate indifference to serious medical needs (i.e., rectal dysfunction, need for eyeglasses, orthopedic footwear, skin infection). His motion for injunctive relief, filed July 18, 2006, seeks immediate medical care for his conditions. (D.I. 21.) In response, the defendants Medical Assistant Malaney ("Malaney") and Correctional Medical Services ("CMS")[1] filed a motion to dismiss the complaint and attached to it Riley's medical records. (D.I. 22.) Defendants Taylor, Carroll and Pierce did not respond to the motion.[2] On August 18, 2006, when the court had not directed the defendants to provide him with immediate medical care,

---

[1] Wrongly named as Correctional Medical Systems.

[2] A waiver of service for the remaining defendant, First Correctional Medical, was filed on July 26, 2006, but to date it has not answered or otherwise entered its appearance. (D.I. 24.)

Riley filed a Petition for Writ of Mandamus in the U.S. Court of Appeals for the Third Circuit. (D.I. 21.)

## II.    STANDARD OF REVIEW

When considering a motion for a temporary restraining order or preliminary injunction, the court determines: (1) the likelihood of success on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the balancing of the hardships to the respective parties; and (4) the public interest. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)(citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted). It is the plaintiff's burden, in seeking injunctive relief, to show a likelihood of success on the merits. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90 (3d Cir. 1992).

## III.   DISCUSSION

Riley's motion seeks immediate medical treatment for various medical conditions. In support of his motion, Riley submits various documents referring to each of his medical conditions: rectal dysfunction, need for eyeglasses, orthopedic footwear, skin infection. His exhibits indicate that he filed a grievance on October 3, 2002, regarding his rectal dysfunction complaining that he had seen a doctor several weeks earlier, that the doctor had prescribed medication without conducting a physical examination, and that the medication did not alleviate painful swelling (D.I. 20, Ex. A-1.) Riley opined, "I think surgery is necessary to correct the problem." He sought an "adequate examination to diagnose the injury rectum and schedule [him] for surgery if needed." Riley filed a second grievance on June 16, 2003, complaining that he had not received a response to his first grievance. *Id.* at Ex. A-2.

On March 2, 2005, Riley filed a grievance seeking special footwear for medical reasons. *Id.* at Ex. A-4. The grievance states that several months earlier, on two different occasions, two doctors approved Riley for high-top boots and sneakers. The grievance indicates that in 1995 a doctor had ordered Riley special footwear. Riley asked for a memo to permit him two pairs of sneakers, one to walk in and one for exercise. Riley wrote to Deputy Warden Pierce on May 7, 2005, complaining that special sneakers were approved during his annual exam and that he also needed special boots. (D.I. 20, Ex. A-16-17.) A letter to Deputy Warden Pierce dated July 9, 2005, indicates that Riley was given a choice between sneakers or boots, but that he believed he was entitled to both. *Id.* at Ex. A-20-21. The exhibits indicate that sneakers were to be ordered, that the grievance was withdrawn, and that Riley signed off on the grievance on August 29, 2005. *Id.* at Exs. A-4, A-5, A-6. Riley's exhibits indicate that as of March 27, 2006, he had not received the sneakers. *Id.* at Ex. A-33-34.

Riley filed a grievance in April 10, 2005, complaining of a strep skin infection contracted from new inmates and aggravated by microbe contamination in the water. *Id.* at Ex. A-8. Riley requested the medical department be ordered to treat his infection. The grievance states that Riley requested treatment on three other occasions and that hydrocortisone and antibiotic creams were not killing the infection. *Id.* at Ex. A-10. Riley also wrote to Deputy Warden Pierce on May 9, 2005, advising him that during his annual physical examination the doctor approved eyeglasses after discovering Riley had severely impaired vision. *Id.* at Ex. A-16.

Medical records submitted by CMS and Malaney indicate that First Correctional Medical ("FCM") requested high top sneakers for Riley on June 27, 2003, because of his history of right ankle internal fixation with screws. He was prescribed the high top sneakers on August 7, 2003.

Riley received sneakers from FCM on November 12, 2003. In early January 2004, Riley was scheduled to see a medical provider for an evaluation for boots. Progress notes dated January 22, 2004, indicate that Riley requested orthopedic boots and had also requested sneakers, but that his request for boots was denied.

A physician's order sheet dated January 21, 2005, ordered that Riley be provided high top boots and an "opth" eye doctor consult. The right eye was 20/200 and the left eye was 20/30.[3] FCM requested high top boots on the same date. Riley requested boots and sneakers on February 20, 2005, and medical records indicate they were ordered.

Riley complained of a skin rash on March 24, 2005, was examined, and no rash was noted. On Riley April 7, 2005, Riley sought treatment for shortness of breath, heart pain and face rash. He was scheduled for a nurse sick call. On July 11, 2005, Riley was seen for a face rash. He also requested his sneakers.

Upon review of the pleadings filed as well as Riley's medical records, the court finds that he has not met his burden to show a likelihood of success on the merits. Defendants CMS and Malaney are correct in their argument that Riley's first claim of denial of medical treatment (i.e., rectal dysfunction) is barred by the application limitation period. Riley placed his complaint in the prison mail system no earlier than December 17, 2005, the date the complaint is signed. Grievances regarding his condition of rectal dysfunction were filed on October 3, 2002, and June 16, 2003, respectively.

---

[3] 20/20 vision is considered normal vision, and 20/30 is considered to be within the range of normal. http://www.agingeye.net/visionbasics/healthyvision.php. A person is considered legally blind with 20/200 or worse in the better eye with the best possible correction. http://www.sparkle.usu.edu/glossary/index.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* Del. Code Ann. tit. 10, § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State*, C.A. No. 99-440-JJF, 2001 WL 845654, at *2 (D. Del. July 24, 2001). Here, Riley knew by at least October 3, 2002, of his medical claim regarding rectal dysfunction, yet he did not file his complaint until December 17, 2005, some three years later. Hence, it is barred by the limitation period.

Riley also has not demonstrated the likelihood of success on the merits as to the other medical claims. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Additionally, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000).

It is evident that Riley receives medical care for his complaints. The medical records

contain numerous references to Riley's pursuit of footwear, and that he was allowed one pair, not the two he desired. The records indicate that his complaints of skin rash were taken seriously and he was seen by a medical provider. Finally, the medical records indicate not that Riley was prescribed eyeglasses and they were not provided, but rather that he was to see an eye doctor for a consultation. While Riley may not like the type of care he has received, it cannot be said that there is a deliberate indifference to his medical needs.

## IV. CONCLUSION

Riley has failed to meet the first prong necessary for imposition of injunctive relief; he has not demonstrated the likelihood of success on the merits. Hence, the court will deny his motion for injunctive relief. The court notes, however, that the medical records do not reflect that while ordered, Riley ever received the prescribed sneakers or that an eye consultation was performed as ordered by the physician. Therefore, the court will order the parties to advise it in writing, no later than one week from the date of this order of the status of Riley's sneakers and eye consultation. The court will deny Riley's motion to stay the proceedings pending a ruling from the U.S. Court of Appeals for the Third Circuit on the petition for a writ of mandamus. An appropriate order will be entered.

/s/ _____
UNITED STATES DISTRICT JUDGE

Oct. 27, 2006
Wilmington, Delaware



FILED
OCT 2 7 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES W. RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-01-GMS |
| | ) |
| STANLEY TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

At Wilmington this 27th day of Oct., 2006, for the reasons set forth in the Memorandum issued this date

1. The motion for a preliminary injunction and temporary restraining order (D.I. 20) is DENIED.

2. The parties shall advise the court in writing, no later than one week from the date of this order, whether Riley has received the sneakers that were ordered by at least February 2005, and whether Riley underwent the eye consultation as ordered in January 2005.

3. The motion to stay all proceedings until there is a ruling on the petition for a writ of mandamus (D.I. 38) is DENIED.

UNITED STATES DISTRICT JUDGE

FILED
OCT 27 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE