IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES W. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 06-01-GMS | |
| | ) | |
| STANLEY TAYLOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

## I.    BACKGROUND

James W. Riley, an inmate housed at the Delaware Correctional Center ("DCC"),

Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging deliberate

indifference to serious medical needs (i.e., rectal dysfunction, need for eyeglasses, orthopedic

footwear, skin infection). The defendants Medical Assistant Malaney ("Malaney") and

Correctional Medical Services, Inc. ("CMS") filed a motion to dismiss the complaint on July 21,

2006. (D.I. 22.) In response, Riley filed a motion for summary judgment which CMS and

Malaney oppose. (D.I. 25, 26.) Next, on August 25, 2006, defendants Commissioner Stanley

Taylor ("Commissioner Taylor"), Warden Thomas Carroll ("Warden Carroll"), and Deputy

Warden David Pierce ("Pierce") (i.e., "State defendants") filed a motion for summary judgment.

(D.I. 30, 31.) Riley did not file a response to the State defendants' motion for summary

judgment.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

The court "accept[s] all well-pleaded allegations in the complaint as true, and view[s]

them in the light most favorable to the plaintiff." *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Carino v. Stefan*, 376 F.3d at 159.

### B.     Summary Judgment

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will

not be sufficient for denial of a motion for summary judgment; there must be enough evidence to

enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing

on an essential element of its case with respect to which it has the burden of proof, the moving

party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

**III.    DISCUSSION**

      **A.    The Complaint**

The complaint contains four counts. Riley alleges in the first count that he filed several

sick call complaints in 2002 requesting treatment for rectum dysfunction stemming from a 1998

injury. (D.I. 2, at 3.) Riley alleges he was seen by a physician on two occasions and prescribed

medication, but was not examined. *Id.* at 3. Riley alleges he told the physician he needed

surgery to correct the problem. *Id.* The complaint goes on to allege that in 2003 Riley wrote to

Warden Carroll about the "denial of adequate medical treatment" for his rectum dysfunction, but

he receive no response. *Id.* Riley alleges that the "medical staff" never conducted an

examination to determine the extent of his injury and to prescribe the correct treatment. Riley

alleges that in 2004 and 2005, during his annual physical examinations, he complained to doctors

about his untreated rectum dysfunction and that he might need surgery, but nothing was done. *Id.*

In his second claim, Riley alleges that at both his 2004 and 2005 medical examinations,

he was prescribed eyeglasses and special orthopedic footwear (i.e., boots and sneakers) due to an

ankle condition. *Id.* at 3-4. Riley alleges that the DCC medical staff is denying him the

prescribed eyeglasses and footwear. *Id.* at 4. Riley alleges that he filed grievances in 2005 and

-3-

also wrote letters to Warden Carroll and Deputy Warden Pierce. *Id.* Riley alleges that Warden

Carroll disregarded his complaints, but that Deputy Warden Pierce sent his complaints to health

services administrators Amy Munson ("Munson")[1] and Malaney to investigate. *Id.* Riley

alleges that Munson and Malaney never corrected the denial of medical treatment or failure to

provide footwear and eyeglasses. *Id.* Riley alleges he filed complaints with Deputy Warden

Pierce regarding Munson and Malaney's failure to investigate and was told that Deputy Warden

Pierce does "not direct medical care concerns." *Id.*

Riley's third medical claim is that in April 2005 he filed several sick call complaints after

noticing a "facial skin infection" similar to necrotizing fasciitis[2]. *Id.* at 5. Riley alleges that as of

the date of the filing of the complaint, he has not been seen by a doctor to see if he is infected

with necrotizing fasciitis. *Id.* Plaintiff alleges that he notified Commissioner Taylor, Warden

Carroll, Deputy Warden Pierce, Munson, and Malaney about his medical complaints and that he

was being denied treatment for his skin infections. *Id.*

Riley's last claim is that Commissioner Taylor and Warden Carroll are responsible for the

denial of medical treatment because of their policies of failing to: (1) maintain an adequate and

qualified staff, (2) prevent interference with adequate medical care once prescribed by a doctor

and when a medical need is serious, (3) remedy unlawful conditions when they know or should

have known the conditions existed within the medical company contracted to provide adequate

health care to inmates at DCC, and (4) carry out their responsibilities to provide and ensure that

---

[1]Munson was dismissed from the case on October 3, 2006.  (D.I. 37.)

[2]Tissue death such as that associated with group A streptococcus infection. *Stedman's Medical Dictionary*  544 (2d ed. 2004).

-4-

adequate medical care for inmates are being met by the contracting medical company.  Riley

further alleges that in hiring CMS and First Correctional Medical ("FCM")[3], Commissioner

Taylor knew or should have known that these medical vendors used inadequate and unqualified

medical staff and employees.

The defendants are sued in their personal and official capacities.  Riley seeks declaratory

and injunctive relief, and compensatory and punitive damages.

### B.    CMS and Malaney's Motion to Dismiss

Malaney and CMS move for dismissal on the bases that the allegations in the first claim

are barred by the applicable two year limitation period, Riley has failed to exhaust his

administrative remedies as required by the Prison Litigation Reform Act ("PLRA") under 42

U.S.C. § 1997e(a), the complaint does not state a cognizable claim for deliberate indifference to a

serious medical need, Riley cannot prove any set of facts to demonstrate that CMS had a policy

or custom that led the medical staff to deprive him of necessary medical care, and CMS cannot

be held responsible for the acts of its employees under a *respondeat superior* theory.  Riley

responded by filing a motion for summary judgment.

Malaney and CMS submitted exhibits outside the pleadings in support of their motion to

dismiss.  The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed

pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by

the court, the matter shall be treated as one for summary judgment and disposed of as provided in

Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(b).  The court will not consider the exhibits submitted and

---

[3]A waiver of service for FCM was returned executed and filed on July 26, 2006.  (D.I.
24.)  To date, FCM has not answered or otherwise appeared.

will continue to treat the motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b).

### 1.    Statute of Limitations

CMS and Malaney argue that Riley's first claim for relief is barred by the two year limitation period inasmuch as his sick call complaints began in 2002, but he did not file his complaint until December 2005. Riley argues that he went through several years of ineffective administrative remedies, from 2002 to 2005, and the exhaustion of remedies tolled the two year limitation period.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* Del. Code Ann. tit. 10, § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir. 1998). Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. Delaware*, C.A. No. 99-440-JJF, 2001 WL 845654, at *2 (D. Del. July 24, 2001). However, because the PLRA makes exhaustion of administrative remedies mandatory, the statute of limitations begins to run only when the plaintiff has exhausted his administrative remedies. *Wright v. O'Hara*, No. Civ. A. 00-1557, 2004 WL 1793018, at *6 (E.D. Pa. Aug. 11, 2004); *Howard v. Snyder*, No. 01-376-SLR, 2002 U.S. Dist. LEXIS 9084, at *4 (D. Del. May 14, 2002).

The court must accept as true the facts as plead in Riley's complaint. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) (citations omitted). However, given that exhaustion turns on the documents related to Riley's grievances, the Third Circuit has held that authentic documents

may be considered without converting the motion to dismiss to a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d at 223.  Regarding his rectum dysfunction, Riley filed a medical grievance on October 3, 2002.  (D.I. 20, Ex. A-1.)  He filed a second grievance on June 15, 2003, complaining he had not received a response to the October 3, 2002 grievance.  *Id.* at Ex. A-2.  Finally, on October 21, 2003, Riley wrote a letter to Warden Carroll complaining that his grievances were ignored.  The complaint alleges that "to date" Warden Carroll has not responded to his complaints.

At the present time, the court cannot fully discern when Riley exhausted his administrative remedies which, as discussed above, triggers the running of the limitations period. Construing the complaint in the light most favorable to Riley as the court must do,  it cannot be said that Riley did not timely file his claim for deliberate indifference to his rectum dysfunction condition.  Therefore, as to this claim, the court will deny CMS and Malaney's Motion to Dismiss based upon expiration of the limitation period.

## 2.     Failure to Exhaust Administrative Remedies

CMS and Malaney argue that Riley failed to exhaust his administrative remedies as is required under 42 U.S.C.  § 1997e(a) and, therefore, the entire complaint must be dismissed. Riley contends that the defendants are incorrect in their assertion that he did not exhaust administrative remedies.  He points to grievances he filed and letters written in 2002 and 2003, all of which, according to Riley, were ignored.  He also contends that he went through several years of ineffective administrative remedies, from 2002 to 2005.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill v. Gillis*, 372 F.3d 218, 227-28 (3d. Cir. 2004); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d. Cir. 2000); *but* see *Freeman v. Snyder,* No. 98-636-GMS, 2001 Westlaw 515258 at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware Department of Correction administrative procedures provide for a multi-tiered grievance and appeal process. Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

As noted above, when considering exhaustion the court may consider the grievances without converting the motion to dismiss into a motion for summary judgment. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). In his complaint, Riley recites a number of medical

ailments, notably rectal dysfunction, a skin rash, and failure to provide medically necessary tennis shoes and eyeglasses. Riley alleges that he wrote to Warden Carroll regarding the rectum dysfunction and submitted grievances and wrote letters to Warden Carroll and Deputy Warden Pierce on the tennis shoe and eyeglasses issues. The complaint also alleges that Riley notified prison officials complaining of lack of medical care for a skin infection.

As discussed above, the court cannot determine when Riley exhausted his administrative claims as to his rectum dysfunction claim. Riley filed a grievance seeking medically necessary boots and sneakers on March 2, 2005. (D.I. 20, Ex. A-4.) The matter was investigated and sneakers were to be ordered. *Id.* at Ex. A-5. The matter was forwarded to the medical grievance committee on June 17, 2005, and Riley signed off on the grievance on August 29, 2005. *Id.* at Ex. A-6. No other documents regarding resolution of the grievance were submitted to the court.

At the present time, the court cannot fully discern whether Riley exhausted his administrative remedies, although in his complaint, he alleges that the medical grievances were resolved unfairly, lending the inference that the grievances were exhausted. Construing the complaint in the light most favorable to Riley, at this juncture, the court will assume that Riley exhausted his administrative remedies. Accordingly, the court will deny CMS and Malaney's Motion to Dismiss on the issue of failure to exhaust administrative remedies.

### 3.    Medical Needs Claim

CMS and Malaney argue that the complaint fails to state a cognizable claim for violation of civil rights in connection with medical treatment. More specifically, they argue that the allegations in the complaint do not constitute deliberate indifference to a serious medical need, and that Riley received medical treatment, although he may disagree with the type of treatment

-9-

received.  CMS and Malaney rely upon medical records submitted by them.  As previously

discussed, the court does not consider matters outside the pleadings when ruling on a motion to

dismiss pursuant to Rule 12(b)(6).

      The complaint alleges that Riley's rectum dysfunction causes excruciating painful

swelling and that this condition has continued for a lengthy period of time without Riley

receiving appropriate medical treatment.  Riley argues that he was seen only once for his skin

rash, and that he was never seen or examined by a qualified doctor for necrotizing fasciitis, but

instead the responsibility was delegated to non-qualified nursing staff.  With regard to footwear,

Riley argues that he is entitled to new footwear once a year.  He contends he was never given

footwear that was approved in 2004 and 2005 physician's orders, and argues that the defendants

offer no proof that the footwear ordered in 2005 was ever provided to him.  With regard to

eyeglasses, Riley argues that the defendants falsely indicate the medical records do not indicate a

need for eyeglasses.

      The Eighth Amendment proscription against cruel and unusual punishment requires that

prison officials provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97,

103-105 (1976).  In order to set forth a cognizable claim, an inmate must allege (i) a serious

medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to

that need.  *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

risk of serious harm and fails to take reasonable steps to avoid the harm.  *Farmer v. Brennan*,

511 U.S. 825, 837 (1994).  Additionally, "a prisoner has no right to choose a specific form of

medical treatment," so long as the treatment provided is reasonable.  *Harrison v. Barkley*, 219

F.3d 132, 138-140 (2d Cir. 2000). Finally, an inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

The complaint alleges a medical condition of rectum dysfunction, including painful swelling to the point that Riley is unable to perform daily activities, and that Riley received treatment for that condition in 2002. The complaint further alleges that despite his requests, he has received no further treatment for the condition. The complaint also alleges that Riley was prescribed eyeglasses and special orthopedic footwear due to an ankle injury, but was denied these medically necessary items. Finally, the complaint alleges that Riley has a skin rash "similar to necrotizing fasciitis," that he has not been permitted to see a doctor, and that he is denied treatment for the skin infection. CMS and Malaney point to the medical records of Riley to support their position. As noted above, however, the court does not consider matters outside the pleadings on a motion to dismiss.

Construing the complaint in the light most favorable to Riley, and keeping in mind his *pro se* status, the court concludes that the complaint adequately alleges medical indifference claims. Therefore, the court will deny CMS and Malaney's motion to dismiss on the basis that the complaint fails to adequately allege a medical needs constitutional violation.

### 4.    Claims against CMS

CMS argues that there is no indication that it had a policy or custom that encouraged or otherwise led the medical staff to deprive Riley of medical care. CMS further argues that Riley

cannot provide any set of facts that would demonstrate the same.  CMS correctly argues that it cannot be held responsible for the acts of its employees under a *respondeat superior* theory. CMS asks the court to dismiss the claims against it for failure to state a claim upon which relief may be granted.  Riley did not respond to this portion of the motion to dismiss.

As discussed above, in order to state an inadequate medical treatment claim under the Eighth Amendment, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. at 104. When a plaintiff relies on the theory of *respondeat superior* to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Miller v. Correctional Medical Systems, Inc.*, 802 F.Supp. 1126, 1132 (D. Del. 1992).  The complaint contains no such allegations.  Hence, CMS cannot be held liable and therefore the court will grant the motion to dismiss CMS as a defendant.  Riley, however, will be given leave to amend the complaint.

### C.     Riley's Motion for Summary Judgment

#### 1.     Facts

Riley provided only one medical record with his motion for summary judgment.  He mainly relies upon exhibits he filed in support of his motion for injunctive relief (D.I.  20) and exhibits filed by CMS and Malaney in support of their motion to dismiss (D.I. 22).

The exhibits reveal that Riley filed a grievance on October 3, 2002, regarding his rectal dysfunction complaining that he had seen a doctor several weeks earlier, that the doctor had prescribed medication without conducting a physical examination, and that the medication did not alleviate painful swelling  (D.I. 20, Ex. A-1.)   Riley was prescribed Colace[4] and a

---

[4]A stool softener.  http://www.colacecapsules.com.

hemorrhoidal creme for a one month period from September to October 2002. (D.I. 22, Ex. 4.)

Riley opined in his grievance, "I think surgery is necessary to correct the problem." (D.I. 20, Ex.

A-1.) He sought an "adequate examination to diagnose the injury rectum and schedule [him] for

surgery if needed." Riley filed a second grievance on June 16, 2003, complaining that he had not

received a response to his first grievance. *Id.* at Ex. A-2. He wrote a letter to Warden Carroll on

October 21, 2003, complaining that he had filed two medical grievances for his rectal condition,

but both were ignored. *Id.* at Ex. A-3.

On June 15, 2003, Riley requested a pair of boots or sneakers with adequate ankle support

due to problems with his ankle. (D.I. 22, Ex. 4.) Medical records indicate that FCM requested

high top sneakers for Riley on June 27, 2003, because of his history of right ankle internal

fixation with screws. *Id.* He was prescribed the high top sneakers on August 7, 2003. *Id.* Riley

received sneakers from FCM on November 12, 2003. *Id.* In early January 2004, Riley was

scheduled to see a medical provider for an evaluation for boots. *Id.* Progress notes dated January

22, 2004, indicate that Riley requested orthopedic boots and had also requested sneakers, but that

his request for boots was denied. *Id.*

A physician's order sheet dated January 21, 2005, ordered that Riley be provided high top

boots and an "opth" eye doctor consult. *Id.* The right eye was 20/200 and the left eye was

20/30.[5] Riley also wrote to Deputy Warden Pierce on May 9, 2005, advising him that during his

annual physical examination the doctor approved eyeglasses after discovering Riley had severely

_____

[5]20/20 vision is considered normal vision, and 20/30 is considered to be within the range
of normal. http://www.agingeye.net/visionbasics/healthyvision.php. A person is considered
legally blind with 20/200 or worse in the better eye with the best possible correction.
http://www.sparkle.usu.edu/glossary/index.

impaired vision. *Id.* at Ex. A-16.

FCM requested high top boots on the same date as the physician's January 21, 2005 order. (D.I. 22, Ex. 4.) Riley requested boots and sneakers on February 20, 2005, and medical records indicate they were ordered. *Id.* On March 2, 2005, Riley filed a grievance seeking special footwear for medical reasons. (D.I. 20, Ex. A-4.) The grievance states that several months earlier, on two different occasions, two doctors approved Riley for high-top boots and sneakers. *Id.* The grievance indicates that in 1995 a doctor had ordered Riley special footwear. *Id.* Riley asked for a memo to permit him two pairs of sneakers, one for walking and one for exercise. *Id.* Riley wrote to Deputy Warden Pierce on May 7, 2005, complaining that special sneakers were approved during his annual exam and that he also needed special boots. (D.I. 20, Ex. A-16-17.) A letter to Deputy Warden Pierce dated July 9, 2005, indicates that Riley was given a choice between sneakers or boots, but that he believed he was entitled to both. *Id.* at Ex. A-20-21. Deputy Warden Pierce responded to Riley on July 22, 2005, that he was forwarding his footwear concerns to Health Services Administrator Malaney. *Id.* at Ex. A-19.

Exhibits submitted by Riley indicate that sneakers were to be ordered, that the grievance was withdrawn, and that Riley signed off on the grievance on August 29, 2005. *Id.* at Exs. A-4, A-5, A-6. Riley's exhibits indicate that as of March 27, 2006, he had not received the sneakers. *Id.* at Ex. A-33-34.

Riley complained of a skin rash on March 24, 2005, was examined, and no rash was noted. (D.I. 22, Ex. 4.) On Riley April 7, 2005, Riley sought treatment for shortness of breath, heart pain, and face rash. *Id.* He was scheduled for a nurse sick call. *Id.* Riley filed a grievance on April 10, 2005, complaining of a strep skin infection contracted from new inmates and

-14-

aggravated by microbe contamination in the water. *Id.* at Ex. A-8. Riley requested the medical

department be ordered to treat his infection. The grievance states that Riley requested treatment

on three other occasions and that hydrocortisone and antibiotic creams were not killing the

infection. *Id.* at Ex. A-10. A response from Munson, dated April 11, 2005, states that Riley's

concerns were noted and refers to a sick call slip dated April 7, 2005. (D.I. 22, Ex. 4.) Riley also

wrote a letter to Warden Carroll on April 12, 2005, regarding the skin infection. (D.I. 20, Ex. A-

12.) Deputy Warden Pierce received the letter and on April 21, 2005, advised Riley that he

forwarded it to the Health Services Administrator Munson for investigation and action. *Id.* at Ex.

A-11. On July 11, 2005, Riley was seen for a face rash. He also requested his sneakers.

### 2.    Analysis

It is Riley's position that he should be granted summary judgment as a matter of law. He

argues that it is undisputed that a fellow prisoner was hospitalized for necrotizing fasciitis

infection and required surgery. (D.I. 25, at 6.) He contends he "possibly contracted this

infection" from that inmate when they were confined in the same building, on the same tier. *Id.*

Riley also contends it is undisputed that he was not seen by qualified doctors with regard to

necrotizing fasciitis or rectum dysfunction. He contends it is undisputed that the defendants have

not provided him with footwear and eyeglasses as ordered by physicians. *Id.* at 7.

CMS and Malaney argue that Riley is not entitled to summary judgment inasmuch as the

complaint fails to state a claim for a constitutional violation, Riley fails to allege any personal

involvement on behalf of CMS or Malaney, and Riley fails to allege deliberate indifference to a

serious medical need.

Riley, as the moving party, has the burden of proving that no genuine issue of material

fact exists.  He has failed to meet this burden.  In reviewing the records, it is clear there remain genuine issues of material fact.  The medical records indicate that Riley received medication for a one month period, apparently to treat his rectum dysfunction, but there are no other medical records referencing this condition.  As to the tennis shoe issue, the records reflect an ongoing effort to provide Riley with the shoes.  In dispute is whether the shoes were ever received in 2005.  Riley contends that a physician ordered him eyeglasses, but the medical records merely reflect that he be seen by an opthamologist for a consultation, not that glasses be ordered. Finally, Riley contends that he has not received sufficient medical care for his skin rash he self-diagnosed as necrotizing faciitis.  It is apparent, however, that his complaint is that rather than being seen by a physician, he received medical treatment from a nurse.

As the moving party, Riley has the burden to prove he is entitled to judgment as a matter of law.  He has failed to meed that burden.  Therefore, the court will deny Riley's motion for summary judgment.

### D.     State Defendants' Motion for Summary Judgment

Riley alleges that the State defendants are responsible for his lack of treatment and the nonresponsiveness to his complaints of denial of medical treatment.  The State defendants move for summary judgment on the basis that no facts are alleged to support Riley's conclusions that the State defendants were deliberately indifferent or intentionally cruel with respect to his medical condition.  (D.I. 30, 31.)  The State defendants also argue that Riley does not allege facts demonstrating that the State defendants were aware of the alleged inadequacies to Riley's medical treatment.  Finally, the State defendants argue that Riley's disagreement with his course of treatment does not rise to the level of an actionable constitutional violation.  Riley did not

-16-

respond to the State defendants' motion for summary judgment.

The State defendants did not submit any exhibits or other documentation in support of their motion for summary judgment but instead rely upon those previously submitted by Riley, CMS, and Malaney. The facts in this case are set forth above in Section III.C.1.

### 1.    Eighth Amendment Violation

The State defendants argue that the complaint fails to state a cognizable constitutional claim based upon the Eighth Amendment. The State defendants contend that the evidence shows that Riley's requests for medical care were submitted to the providers and that he has received ongoing medical treatment throughout his incarceration. The State defendants also argue that any failure by them to respond does not implicate the deliberate indifference requisite of an Eighth Amendment claim. The State defendants contend that Riley failed to establish any evidence to support the conclusion that the State defendants knew or had reason to know that prison doctors or their assistants were mistreating or not treating him. The State defendants argue that there is no evidence produced by Riley to suggest that they knew or had the medical background to know that Riley faced a substantial risk of serious harm and disregarded that risk. The burden, however, is upon the State defendants, not Riley, to show there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

The record reflects that Riley unsuccessfully sought treatment for his rectum dysfunction, by filing medical grievances that were not responded to, and writing to Warden Carroll, advising him that medical was not responding to his complaints, explaining his medical condition in detail, and asking Warden Carroll to assist him in obtaining treatment. The record reflects that Riley has received ongoing medical treatment for his ankle and that the medical staff was diligent

-17-

in the pursuit of medically necessary shoes for Riley.  *See Estelle v. Gamble*, 429 U.S. 97, 107

(1976).  It seems that the real issue is, that while the shoes have been ordered, Riley either has

not yet received them or he did not receive them as quickly as he desired.  Regardless, it is

undisputed that the shoes are required for Riley's medical condition of a right ankle internal

fixation with screws and that a physician ordered the shoes, but for reasons unexplained, the

shoes were not provided.  Riley filed grievances and wrote to Deputy Warden Pierce on two

occasions that he was approved for the footwear, but that it was not provided.  On both occasions

Deputy Warden Pierce forwarded the complaint to Munson, the Health Services Administrator.

After receiving the second letter, Deputy Warden Pierce advised Riley that he did "not direct

medical care concerns."  (D.I. 20, Ex. A-19.)

Riley acknowledges that he received treatment for his skin rash, which he speculates is

necrotizing faciitis, yet not the type of treatment he desired.  Riley seeks treatment from a

"qualified doctor."  He acknowledges he received treatment for the skin rash, but the task was

"delegated to non-qualified nursing staff."  (D.I. 25, at 4.)  It is undisputed that Riley received

medical treatment, albeit not to his liking.  As previously noted, however, disagreement with

medical treatment does not rise to the level of a constitutional violation.

Riley's last medical complaint is that he did not receive eyeglasses as ordered by

physicians.  Eyeglasses can be considered a serious medical need.  *See, e.g., Newman v.

Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (failure to provide inmate with eyeglasses and

prosthetic devices can constitute deliberate indifference).  Contrary to Riley's position, the

medical records submitted do not indicate his physicians ordered him eyeglasses.  Nonetheless, a

physician ordered a referral for Riley to have an opthamologist consultation.  There is no

indication in the medical records that Riley had the consultation or that he received any

eyeglasses. The record also reflects that Riley made written complaints to Deputy Warden Pierce

that he was being denied eyeglasses, to no avail.

"Where prison authorities deny reasonable requests for medical treatment. . .and such

denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate

indifference is manifest. Similarly, where 'knowledge of the need for medical care [is

accompanied by the]. . .intentional refusal to provide that care,' the deliberate indifference

standard has been met. . . .Finally, deliberate indifference is demonstrated '[w]hen. . .prison

authorities prevent an inmate from receiving recommended treatment for serious medical needs

or deny access to a physician capable of evaluating the need for such treatment." *Monmouth

County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

"Short of absolute denial, 'if necessary medical treatment [i]s. . . delayed for non-medical

reasons, a case of deliberate indifference has been made out." *Id.* (citations omitted).

"Deliberate indifference is also evident where prison officials erect arbitrary and burdensome

procedures that 'result[ ] in interminable delays and outright denials of medical care to suffering

inmates.'" *Id.* at 347 (citation omitted). *See Sprull v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004)(a

non-physician supervisor may be liable under § 1983 if he knew or had reason to know of

inadequate medical care).

The State defendants argue that Riley received ongoing medical treatment throughout his

incarceration and rely upon *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993) to support their

motion for summary judgment. *Durmer v. O'Carroll* held that "[t]he only allegation against

either of these two [prison official] defendants was that they failed to respond to letters [the

plaintiff] sent to them explaining his predicament.  Neither of these defendants, however, is a

physician, and neither can be considered deliberately indifferent simply because they failed to

respond directly to the medical complaints of a prisoner who was already being treated by the

prison doctor." (footnoted omitted).  The holding in *Durmer* was  clarified in *Spruill v. Gillis,*

372 F.3d 218 (3d Cir. 2004).  *Spruill* holds that absent a reason to believe (or actual knowledge)

that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical

prison official will not be chargeable with the Eighth Amendment scienter requirement of

deliberate indifference.  *Spruill*, 372 F.3d at 236.

In this case, the evidence before the court is that due Riley's letters, Warden Carroll had

actual knowledge that Riley was not receiving treatment for his rectum dysfunction, and Deputy

Warden Piece had actual knowledge that despite a physician's orders,  Riley did not receive

medically necessary shoes or ophthalmology treatment.  Based upon the exhibits in the record, it

is evident that as to the skin rash issue, there is not a cognizable constitutional claim for

deliberate indifference to a serious medical need inasmuch as Riley's complaint is his

disagreement with the type of treatment he received.

Accordingly, the court will grant the State defendants' motion for summary judgment as

to the skin rash issue as it fails to state a claim upon which relief may be granted and deny the

motion for summary judgment as to the remaining claims.

### 2.    Eleventh Amendment Sovereign Immunity

The State defendants argue that the Eleventh Amendment bars suits brought against them.

The doctrine of sovereign immunity bars suits for monetary damages against state employees in

their "official capacities," absent waiver or Congressional override.  *Kentucky v. Graham*, 473

U.S. 159, 169 (1985). There is no evidence that § 1983 intended to effect a Congressional

override of state sovereign immunity. The statute has been held not to "provide a federal forum

for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Section 1983 authorizes suits against

"persons," and a suit against a state official is "no different than a suit against a state itself." *Id.*

at 71. "The state itself [is not] a person that Congress intended to be subject to liability." *Id.* at

68. Also, there is no indication that the State of Delaware has waived or abrogated its sovereign

immunity with respect to § 1983 claims. Therefore, the court will grant the motion for summary

judgment as to the official capacity claims seeking monetary damages raised against the State

defendants.

### 3.    Personal Involvement

The State defendants argue that Riley fails to allege the personal involvement of either

Taylor, Carroll, or Pierce. More particularly, the State defendants argue that Riley failed to

identify how the State defendants participated in, intentionally delayed, or in any other way,

interfered with the medical treatment Riley claims deprived him of a constitutional right. The

State defendants argue that Riley's claims are without merit and must be dismissed.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of state law.

*West v. Atkins,* 487 U.S. 42, 48 (1988). Personal involvement can be shown through allegations

that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a

plaintiff's constitutional rights. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)*; see*

*Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may

attach if the supervisor implemented deficient policies and was deliberately indifferent to the

resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm

suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also*

*City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for*

*Women*, No. 04-1786, 128 Fed. Appx. 240 (3d. Cir. 2005).

      Contrary to the State defendants' position the complaint adequately alleges that the State

defendants had personal involvement in the denial of medical treatment. Indeed, the complaint

alleges that the policies of Commissioner Taylor and Warden Carroll were the driving force

behind Riley's alleged denial of medical care. Also, the complaint contains specific allegations

against Deputy Warden Pierce. Therefore, the court will deny the motion for summary judgment

on the basis of personal involvement.

### 4.    Damages

      The State defendants argue that Riley has not shown proof of actual injury and has failed

to allege and prove a cognizable injury at the hands of the individual defendants. The State

defendants conclude that Riley is not entitled to monetary damages, either compensatory or

punitive. Similarly, the State defendants argue that Riley has failed to show that he is entitled to

injunctive relief.

      At this stage of the litigation claims remain viable against the State defendants. Contrary

to the State defendants' position that there is no proof of actual injury, Riley alleges that he

experiences excruciating painful swelling because of lack of treatment for his rectum

dysfunction, that because he is being denied eyeglasses he suffers from frequent headaches due to

his untreated, impaired vision, and that the tennis shoes are crucial to daily activities, protects his

skin and provide support when walking and exercising. The court determines that the motion for summary judgment on the issue of damages is premature.

Also, at this time, the court sees no need to address the issue of injunctive relief inasmuch an order was recently entered denying preliminary injunctive relief. *See* D.I. 41. The issue of permanent injunctive relief, again is not ripe for adjudication, and is a matter to be addressed should the case be resolved in favor of Riley. Therefore, the court will deny the motion for summary judgment as to the issue of damages.

## IV.     CONCLUSION

The court will grant in part and deny in part the motion to dismiss filed by CMS and Malaney. Riley will be given leave to amend his claims against CMS. The court will deny Riley's motion for summary judgment. The court will grant in part and deny in part the State Defendants' motion for summary judgment. An appropriate order will be entered.

UNITED STATES DISTRICT JUDGE

_____Dec 5_____, 2006
Wilmington, Delaware



FILED

DEC - 7 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

-23-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES W. RILEY,           )
                              )
         Plaintiff,         )
                              )
     v.                 ) Civ. No. 06-01-GMS
                              )
STANLEY TAYLOR, et al.,    )
                              )
        Defendants.     )

**ORDER**

At Wilmington this 5th day of _____, 2006, for the reasons set forth in the Memorandum issued this date

1. The motion to dismiss filed by Correctional Medical Services, Inc. and Medical Assistant Malaney (D.I. 22) is GRANTED in part and DENIED in part. CMS is dismissed as a defendant.

2. Riley is given leave to amend his allegations against defendant CMS. The amendment shall be filed within 30 days from the date of this order.

3. The motion for summary judgment filed by James R. Riley (D.I. 25) is DENIED.

4. The motion for summary judgment filed by Commissioner Stanley Taylor, Warden Thomas Carroll, and Deputy Warden David Pierce (D.I. 30) is GRANTED in part and DENIED in part. All claims for monetary damages against the state defendants in their official capacities are dismissed. The skin care issue is dismissed as the record does not support the medical needs claim. The remaining claims are viable and will proceed.

FILED

DEC - 7 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES DISTRICT JUDGE