From: James W. Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

To: Honorable Gregory M. Sleet
U.S District Court Judge
Delaware District Court
844 N. King Street
Wilmington, Delaware 19801

{ Complaint of Civil and Criminal Conspiracy }

Re: Riley v. Taylor, et al.,
C.A. No. 06-01-GMS

February 8, 2007

Dear Judge Sleet,

Attached hereto are Three (3) Letters plaintiff Riley written to the defendant David Pierce (Exhibit-A), Commissioner of the Delaware Department of Corrections Carl Danberg *(Exhibit-B), and Attorney for the United States Department of Justice Cathleen M. Waters.(Exhibit-C).

These officials were placed on notice of the continued violation of plaintiff Riley's 8Th Amendment rights to medical care and Treatment.

The defendants and their attorneys (The Attorney General Office) still refuse to provide any reasonable medical care to Mr. Riley. Their misconduct is completely reprehensible and criminal, meant maliciously

---

* Mr. Danberg is The Former Attorney General of The State of Delaware whom office is currently representing the prison officials-defendants in this lawsuit. Also Mr. Danberg represented Former Commissioner Stanley Taylor (The defendant herein) during The December 29, 2006 Settlement Agreement entered with The United States Department of Justice. The Attorney General Office is personally involved in The denial of medical care.

1

to cause death & physical harm to prisoners and plaintiff; and their repeated criminal actions evinces an indifference to or a reckless disregard for plaintiff's health & safety resulting in continued intentional harm and attempt to cause wrongful death to plaintiff.

The United States Department of Justice (DOJ) conducted a nine (9) month investigation into The Delaware Department of Corrections (DOC) health care system. The DOJ found substantial health care violations throughout The DOC and the Delaware Attorney of Office, Mr. Danberg and defendant Stanley Taylor negotiated a Settlement Agreement with The DOJ to correct all these health care violations over a three year period. The DOJ's investigation and the News Journey Paper investigation into prison health care revealed that from 2000 to 2005 at least 89 Delaware prisoners die in the care of the medical staff contracted to provide medical treatment to inmates that resulted in numerous of wrongful death lawsuits which were (or in the process of being) settled out of court to cover up The DOC's criminal liability and prosecution for the death of these prisoners.

A. Civil And Criminal Conspiracy Between Delaware's Judicial Officials To Cover Up The Murder Of Prisoners By DOC Medical Department

While The DOC were in the process of negotiating the settlement agreement with The DOJ the Delaware Correctional Center's (DCC) medical staff - The Correctional Medical Services, Inc. (CMS) were in the process of intentionally causing the death of another prisoner (Demetrius Caldwell) on January 10, 2007. The DCC/CMS officials first Falsely reported that Mr. Caldwell died from Meningitis infection in a deliberate attempt to cover up their criminal liability for murder. (See Friday Jan. 12, 2007 News Journey Paper article front page titled - "Meningitis Feared In Inmate's Death").

2

However, after a prison guard notified Mr. Caldwell's family of other prison guards' threats to harm Mr. Caldwell did DCC/CMS Top prison and medical officials ruled out meningitis as the cause of his death, but still won't reveal the actual cause of death. (See Wednesday Jan. 17, 2007 News Journey Paper Article page A9 Titled - "No Word On What Killed Healthy Boy").

### B. Judicial Officials Involved In The Conspiracy To Cover Up Murder Of Delaware Prisoners By DOC Medical Department

The Governor of Delaware Ruth Ann Minner; Delaware Attorney General Joe Biden; The Delaware Legislatures; Delaware State & Federal Courts; DOC Commissioner Carl Danberg and The U.S Department of Justice (Cathleen Waters) are all aware and possess full knowledge that the DCC prison & medical staff officials murdered Mr. Caldwell and intentionally attempted to cover up their liability for the death of this prisoner. Yet none of these officials (including The U.S DOJ) are pursuing this incident as a criminal case and demanding that both the State and Federal Attorney General Offices conduct a thorough criminal investigation to support potential Grand Jury Indictments and any subsequent prosecution for those prison officials responsible for the murder of Mr. Caldwell. The Attorney General Office has a lawful obligation to bring those to justice for this crime. And The Judiciary Committee of The State and Federal Courts under the jurisdiction of The Third Circuit Court of Appeals also has an obligation to ensure that The Attorney General Office uphold its oath irrespect of race, status, origin or political affiliation.

These Delaware Judicial officials are allowing their State prison employees to intentionally murder and harm

prisoners through denial of adequate medical care and physical assaults by the medical staff then cover up any criminal liability by making million dollar settlement agreements with victim's family in civil action lawsuits; and in cases where a prisoner is not fortunate to have attorney representation the Delaware Courts allow the Attorney General office to drag-out a medical lawsuit case for years through lengthy litigation process while the prisoner suffer unnecessary prolonged pain & suffering from obvious denial of medical treatment for serious medical needs.

Despite the illegal settlement agreement the DOC made with the U.S DOJ on false pretenses to refrain from the unconstitutional policy and practice to deny Delaware prisoners adequate medical care and to correct current 8th Amendment health care violations at all its prison facilities, however prison officials at DCC continue to deny inmates reasonable medical care.

This court in this case involving plaintiff Riley has denied defendants' motion for summary judgment, ruling that defendants are liable for denying Riley medical treatment for several health care problems, one of which is an undiagnosed rectal dysfunction with symptoms associated with colon cancer and lower rectal complications or tumor growth.

Plaintiff is left to suffer excruciating painful swelling of his rectum each time he defecate. Plaintiff Riley is similarly situated with another prisoner (Darnell Anderson) who was murdered by medical staff in 2004. Mr. Anderson was denied medical treatment for a preventable and treatable illness but since it wasn't diagnosed in time it was fatal. (See Wednesday Jan. 17, 2007 News Journal Paper, Front page Article and at www.delaware-online.com.).

The defendants are intentionally attempting to cause plaintiff Riley's death in same manner in which they did in the case of Mr. Anderson by deliberately failing to treat Riley for known symptoms of potential (fatal) serious but curable medical illnesses if diagnosed in their early stages.

This is the same criminal policy and practice The DOC and its medical provider (CMS) agreed to rescind in the settlement with the DOJ.

### C. The District Court's Failure To Issue An Injunction On Defendants To Provide Plaintiff Riley Medical Treatment Demonstrate An Acquiescence In The Conspiracy To Murder Him

If the District Court Judiciary is not part of this ongoing civil and criminal conspiracy to murder and harm plaintiff by failing to provide medical treatment for his serious medical needs, then why is this Court neglecting to issue a preliminary injunction on the defendants to provide Riley immediate medical treatment?

Despite what happens in this case plaintiff still possess an 8th Amendment Constitutional right to adequate medical treatment to STOP his prolonged pain & suffering identified on page 22 & 23 of the Court's December 5, 2006 Memorandum denying defendants' Motion For Summary judgment and plaintiff's request for injunctive relief.

Neither by way of summary judgment or Trial by Jury can the Judiciary of this court or any other court in the United States rule that plaintiff is not entitled to medical care for his serious medical needs as established by the U.S. Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976). The Estelle right is Absolute!! The Supreme Court held:

> These elementary principles establish the government's obligation to provide medical care for these whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical need;

(continue)...

5

> iF The auThoriTies Fail To do so, Those needs will noT be meT. In The worsT cases, such a Failure may acTually produce <u>physical</u> "<u>torture or a lingering deaTh</u>", (ciTaTion omiTTed), The evils of mosT immediaTe concern To The draFTers oF The AmendmenT. In less serious cases, denial oF medical care may resulT in <u>pain and suFFering</u> which no one suggesTs would serve any penological purpose.

<u>EsTelle</u> 429 U.S. aT 103.

The deFendanTs and the named judicial oFFicials herein above in SecTion-"B" acTs oF civil and criminal conspiracy To caue "torture, lingering deaTh, pain and suFFering" (boTh The lesser & greaTer evils) To Delaware prisoners by Knowingly and deliberaTely denying Them adequaTe medical care is ToTally againsT The 8Th AmendmenT prohibiTion oF cruel and unusual punishmenTs "repugnanT To The conscience oF mankind." <u>EsTelle</u> aT 102-105.

This courT has no discreTion buT To enForce These binding principles oF <u>EsTelle</u> in This case by way oF issuing a PermanenT InjuncTion on deFendanTs To <u>OBEY</u> The Law To provide plainTiFF immediaTe medical TreaTmenT. IF This CourT Fail To acT accordingly, Then iTs complicity in This ComplainT oF Civil and Criminal Conspiracy To murder and harm him is clearly esTablished by Law.

Furthermore, This courT shall also reporT Delaware oFFicials' criminal acTs oF genocide and deliberaTe egregious breach of Federal consTiTuTional Law To The ATTorney General oF The UniTed STaTes and demand ThaT a <u>criminal Federal invesTigaTion</u> be conducTed inTo The deaThs oF The 90 prisoners aT Delaware DeparTmenT oF CorrecTions and The aTTempTed murder of plainTiFF Riley by The medical deparTmenT. Over halF of These deceased prisoners are <u>Black</u>. PlainTiFF Riley is Black Too! 11 Del. C. § 6523 permiTs The CourTs To invesTigaTe The medical care services provided To prisoners by The DOC. (See ExhibiT-D).

6

## D. Relief

For these inhumane criminal acts committed by the Delaware officials and the United States Department of Justice described herein above which result in continuing prolonged pain & suffering, physical irreparable injuries & harm, mental & emotional suffering and deliberate attempt wrongful death by intentionally denying Riley medical care, plaintiff ask that he be compensated $100.000.000 (one hundred million dollars) and another $100.000.000 in punitive and compensatory damages. (Two hundred million dollars).

This entire complaint is subject to be amended upon appointment of counsel when a change of venue is granted.

I declare under penalty of perjury that the above information is true and correct.

2/16/07
Date

_James Riley_
Plaintiff

Sworn and Subscribed before me this 16th day of February, 2007

_____
Notary Public

Re: Riley v. Taylor, et al.,
C.A. No. 06-01-GMS

TO: David Pierce
Deputy Warden of DCC

January 25, 2007

Dear Deputy Warden Pierce,

This is to inform you that on November 3, 2006 your Attorney forwarded a letter to district Court Judge Gregory M. Sleet regarding my current medical care status. In that letter you are quoted as having a ..."discussion with James Rundle, Health Services Administrator for CMS at DCC concerning James Riley's current medical care status"; that... "Mr. Rundle informed Deputy Warden Pierce that CMS Medical Director for DCC, Dr. Rodgers has reviewed Mr. Riley's medical chart and has rewritten the order for an ophthalmology consultation scheduled immediately"; That..." the CMS Regional Medical Director has approved the purchase of a pair of high-top sneakers for Mr. Riley". And That..."Dr. Rodgers will examine Mr. Riley on November 3, 2006 to resolve any remaining medical care issues."

Unquote - This is to further inform you that the medical staff and Mr. Rundle have not treated Mr. Riley in the manner in which you conveyed in the November 3, 2006 letter sent to Judge Sleet by your Attorney. For the exception of providing Mr. Riley with a pair of Faulty lens eyeglasses which he refused to accept for that reason, however the nurse indicated on January 19, 2007 that the medical staff will not provide the orthopedic footwear (boots & sneakers) or any treatment for the

Exhibit-A

rectal dysFunction.

    Judge Sleet have been notified of your contradicting statements to provide medical treatment and your subsequent failure to render the level of medical care conveyed in your letter to the Court.

James Riley #169716<br>
MHU, Bldg. 22<br>
C-Tier, Cell 4-9-T

CC:
    Judge Sleet

From: James Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

To: Carl Danberg
Former Attorney General of Dela.
Department of Justice
820 North French Street
Wilmington, Delaware 19801

January 25, 2007

Dear Danberg,

Prison officials at DCC are still engaged in an ongoing unconstitutional policy and practice of denying inmates adequate medical treatment for serious medical complains. Enclosed is a letter I wrote to Delaware District Court Judge Gregory M. Sleet regarding prison officials' refusal to provide me any medical treatment for a painful rectal dysfunction that existed for 4-years and treatment for several other medical problems as ordered by doctors over 2-years ago.

This is a direct violation of the recent settlement agreement your administration made with the U.S Department of Justice in which prison officials agreed to correct such health care violations and to comply with State and Federal standards governing prison health care and appropriate medical treatment. See 11 Del. C. § 6523 and Estelle v. Gamble, 429 U.S. 97 (1976).

Also I am comtemplating filing a civil action lawsuit for civil conspiracy between the district court, Attorney General Office and prison officials to murder inmates through intentionally denying them adequate medical treatment. The U.S Department of Justice has been notified of the ongoing non-compliance with the settlement agreement.    Exhibit-B

James Riley

January 25, 2007

To: Cathleen M. Waters
United States Department of Justice
Washington, D.C. 20530

Dear Ms. Waters,

By now you should have received the letter I wrote to you a couple weeks ago regarding the unconstitutionality of settlement agreement the U.S. Department of Justice made with Delaware prison officials on inmates' health care after finding substantial violations in the health care system. As I explained in my letter, the agreement conflict with prison officials' ongoing health care violations in a number of inmates' cases where adequate medical care is still being denied for serious medical needs which demonstrate a willful propensity on part of prison officials to continue the illegal conduct they fraudulently agreed to rescind from. So this settlement agreement was entered on false pretenses in an attempt to cover up prison officials criminal acts of genocide (murder of inmates) by intentionally denying them adequate medical care.

Enclosed is a letter I forwarded to Delaware District Court Judge, Gregory M. Sleet, regarding civil conspiracy between the Court, State Attorney General Office and prison officials. I am contemplating filing a civil action lawsuit for civil conspiracy and because the settlement agreement clearly establish the U.S. Department of Justice's complicity in these illegal and criminal acts of genocide, your office will be named as a defendant in my lawsuit.

You know this agreement represent a conflict of interest and was made without consent of inmates.

Exhibit - C

These people you made this false agreement with have been denying me medical treatment for a rectal dysfunction for over 4-years, since 2002. Also, enclosed is a recent motion I filed in district court to hire an independent medical examiner to examine me for colon and prostate cancer or tumor growth due to the rectal dysfunction symptoms and my age & race factors.

These sort of cancers are curable if diagnosed early, but fatal if not!!

Your office should not have entered into any settlement agreement until prison officials resolved any and all pending health care complaints by prisoners.

Thus your office shall act immediately to bring my case in compliance with the terms of the settlement agreement, i.e. "Prison officials' promise to correct all health care problems and render the standard of treatment required by State and Federal law.

I hope to hear from you soon!

Sincerely,
James Riley
Del. Corr. Ctr.
1181 Paddock Road
Smyrna, Dela. 19977

contract during which time the probationary employee shall not be eligible for merit system status. Upon the successful completion of the probationary period, the employee shall be covered by the classified service as defined under Chapter 59 of Title 29. (60 Del. Laws, c. 654, § 1.)

### Subchapter II. Commissioner of Correction

### § 6516. Commissioner in charge.

The Commissioner shall assume full and active charge of the Department, its facilities and services, and is the chief executive and administrative officer of the Department. (11 Del. C. 1953, § 6516; 54 Del. Laws, c. 349, § 1.)

### § 6517. Duties and responsibilities of the Commissioner.

The Commissioner shall carry out and provide for:

(1) Promulgating rules and regulations to carry out the Commissioner's duties and operate the Department which shall not be inconsistent with the general policies of the Board;

(2) The organization, maintenance, control and operation of the Department;

(3) The custody, study, training, treatment, correction and rehabilitation of persons committed to the Department;

(4) Regulating the nature and limitations of authorized punishments for violations of the rules established for the government of any institution or facility under the jurisdiction of the Department, but corporal punishment shall not be inflicted therefor; providing by general rule for a merit system for reduction of confinement;

(5) The administration, supervision, operation, management and control of state correction institutions, farms or any other institution or facility under the jurisdiction of the Department;

(6) The management and control of institutional labor and industry;

(7) The operation of probation and parole field services;

(8) The employment of such officers, employees and agents as may be deemed necessary to discharge the functions of the Department, together with establishing their qualifications and the establishment of a merit system and training programs;

(9) Developing a suitable administrative structure providing for divisions, bureaus and services within the Department;

(10) Governing the transportation and transfer of offenders and persons between the various institutions and facilities under its jurisdiction or elsewhere as provided in this chapter, transfers to be made by issued orders, the reasons thereof to be made a matter of record, in each case. No female offender or person shall be transferred unless accompanied by at least 1 female officer or guard;

(11) Managing and supervising the Department and doing any and all things necessary to carry out and to fulfill the purposes of this chapter;

(12) Periodic reports to the Board of an analysis of the institutions and services within the Department, and analysis and evaluation of the adequacy and effectiveness of personnel and buildings. (11 Del. C. 1953, § 6517; 54 Del. Laws, c. 349, § 1; 70 Del. Laws, c. 186, § 1.)

---

**Cross references.** — As to powers, duties and functions of the Commissioner, see § 8903 of Title 29.

### Subchapter III. Divisions of the Department

### § 6520. Establishment of divisions.

There shall be within the Department a Division of Field Services for probation and parole services, a Division of Statistics, Research and Planning and such other divisions and subdivisions, including a Division of Institutions, with such personnel as the Commissioner shall deem desirable. (11 Del. C. 1953, § 6520; 54 Del. Laws, c. 349, § 1.)

### Subchapter IV. Division of Field Services

### § 6521. Division of Field Services.

The employees of the Division of Field Services, Department of Correction, shall have their job qualifications and pay scales approved by the Director of the State Personnel Commission and the Commissioner of the Department of Correction. (11 Del. C. 1953, § 6521; 54 Del. Laws, c. 349, § 1; 57 Del. Laws, c. 233, § 1.)

### Subchapter V. Diagnostic Services and Special Groups

### § 6523. Diagnostic services.

(a) There shall be within the Department a diagnostic service, consisting of 1 or more branches, to make social, medical, psychological and other appropriate studies and investigations of persons committed to its care. At the request of any sentencing court, the diagnostic service shall, to the extent possible, receive for study and report to the court concerning any person who has been convicted, is before the court for sentencing and is subject to commitment to the Department.

(b) The diagnostic service shall take steps to ensure that infectious diseases are not disseminated among the persons committed to the Department's care and staff. In performing the function, the diagnostic service is empowered to review medical histories, to complete medical histories, to complete appropriate medical examinations, to perform laboratory tests as are deemed appropriate, and to begin a course of treatment on persons committed to its care. (11 Del. C. 1953, § 6523; 54 Del. Laws, c. 349, § 1; 65 Del. Laws, c. 424, § 1.)

### § 6524. Special problem groups.

The Department may establish facilities for the treatment of alcoholics, prostitutes, drug addicts and other such groups as the Department shall determine. The Department shall coordinate its work with any other state agency to reduce overlapping or duplication of functions and services. (11 Del. C. 1953, § 6524; 54 Del. Laws, c. 349, § 1.)

Exhibit-"D" §6523

# Certificate of Service

I, __James Riley__, hereby certify that I have served a true and correct cop(ies) of the attached: __Notice of Letter/Complaint For Civil And Criminal Conspiracy__ upon the following parties/person (s):

TO: __Ruth Ann Minner__ *
__Governor of State Dela.__
__Tatnall Building__
__William Penn Street, 2nd Fl.__
__Dover, Delaware 19901__

TO: __Clerk's Office__ *
__Dela. Supreme Court__
__45 The Green__
__Dover, Delaware__
(The Supreme Court shall notify All Superior Courts)

TO: __Clerk's Office__ *
__Legislature Hall__
__Dover, Delaware__
(The Clerk Shall Serve All members of The Senate And Representives A Copy of The Attached Letter/Complaint)

TO: __Joe Biden__ *
__Attorney Of Delaware__
__Department Of Justice__
__820 N. French St.__
__Wilmington, Dela. 19801__

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this __26__ day of __February__, 200__7__

_____ James Riley _____

\* All The Served State officials Are obligated To investigate The denial of Medical care in prisons and resulting death of prisoners pursuant To 11 Del. C. § _____ "Diagnostic Services" (See Exhibit-D attached)

# Certificate of Service

I, _James Riley_, hereby certify that I have served a true and correct cop(ies) of the attached: _Notice of Letter/Complaint For Civil And Criminal Conspiracy_ upon the following parties/person (s):

TO: Carl Danberg *
Commissioner of Corrections
245 McKee Road
Dover, Delaware 19904

TO: Ophelia M. Waters *
Deputy Attorney General
820 N. French St.
Wilmington, Dela. 19801
(Att. For Prison Officials)

TO: Cathleen M. Waters
United States Dept. Of Justice
Washington, DC 20530

TO: Kevin J. Connors *
1220 N. Market St., 5th Fl.
P.O. Box 8888
Wilmington, Dela.
19899-8888
(Att. For Medical defs)

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this _26_ day of _February_, 2007

_James Riley_

* All the served parties are obligated to investigate the denial of medical care in prisons and resulting death of prisoners pursuant to 11 Del. C. § 6523 for "Diagnostic Services". (See Exhibit-D Attached)